A trial was had on a motion for a new trial entered of record, which it was a-greed should be argued in vaca-tion, which was done, and agreed that the bill of exceptions be entered at the next term, when the case not be-ing noticed upon the record at the next succeeding term, the bill of exceptions was signed and filed without objec-tion—Held that there was no in-jurious irregular-ity available in this court.

## Singleton's Ad'r. *vs* Kennedy, Smith & Co..

### ERROR TO THE FAYETTE CIRCUIT.

### *Fraud. Damages.*

JUDGE BRECK delivered the opinion of the Court.—Chief Justice Mar-shall did not sit in this case.

THIS was an action on the case, brought by Kennedy, Smith & Co., against Lewis Singleton, for an alleged fraud in the sale of a lot of cotton bagging. Two trials were had. On the first there was a verdict for the plaintiffs for $632 76. On the second, a new trial hav-ing been granted at the instance of the defendant, a verdict and judgment were rendered for the plaintiffs for $857 14, and to reverse that judgment, the admin-istrator of Singleton has brought the case to this Court.

It is contended that the verdict was not authorized by either the facts or the law, and that the Circuit Court erred in giving and in withholding instructions.

Before we examine the merits of the controversy, we will dispose of a question presented by the defendant, in reference to the bill of exceptions.

It appears that the judgment sought to be reversed, was rendered at the March term of the Court, 1847. At the same term a motion for a new trial was made, but the record shows no disposition of it in any way. At the July term following, we find an order, that by consent of parties, the motion for a new trial might be argued and decided in vacation. At the October term following, the motion for a new trial was overruled, and a consent order that the bill of exceptions might be signed at the November term. The case is not noticed at that term; but at the February term, 1848, the re-cord states that a bill of exceptions was presented by the defendant, signed, &c., and ordered to be recorded.

It is objected, that the Court had no authority at that term, to sign or permit the bill of exceptions to be en-tered, and that it does not properly constitute any part

of the record. As no objection, however, was made at the time, and in view of the previous orders and agreements, the presumption, we think, should be indulged, that the Court acted correctly, and that the exceptions were entered in virtue of some arrangement of the parties, and by consent.

In reference to the facts of the case, so far as necessary to advert to them, it is sufficient to say that the testimony conduced to prove the following:

That in December, 1843, Black & Muir, of New Orleans, as agents of Kennedy, Smith & Co., a mercantile firm in Louisville, purchased of G. M. Pinkard, of New Orleans, 243 pieces of cotton bagging, each piece containing 75 yards, at 13¼ cents per yard. Pinkard was the commission merchant and agent of Lewis Singleton, of Kentucky, by whom the bagging had been manufactured, and to whom it belonged. Black & Muir, as the agents of Kennedy, Smith & Co., sold 192 pieces of this bagging to Harrison & Blair, of Mobile, at 16 cents per yard. That in shipping the article from New Orleans to Mobile, some of the pieces got wet, and it became necessary to unrol them to dry, when it was discovered they had been what is termed *plated*, the covering or a yard or two at the outer end being of a superior quality, and all the residue open, slazy, and very inferior. That upon examination, this was ascertained to be the character of the whole 192 pieces.

As between Harrison & Blair, and Black & Muir, the matter being referred to arbitrators, it was decided that the latter should take the article back and pay all expenses in shipping it from New Orleans to Mobile and back. As between Black & Muir and Pinkard, the matter was also referred to arbitrators, and an award in favor of Pinkard, which was afterwards, however, by the appropriate judicial tribunal in Louisiana, set aside and declared to be null and void.

The testimony further conduced to prove that the bagging in contest was *plated* by the direction of Singleton, and that he knew it was an inferior article. That he had pseviously been in the habit of manufacturing bagging of first rate quality, and that the repu-

tation of his brand had been good. That when Black & Muir, or rather Black made the purchase from Pinkard, he remarked, that he had seen the bagging of Singleton, as it was manufactured in the loom the season previous, and was satisfied with the quality of what he had seen. That Pinkard, although aware that the article he was selling was not of the same quality as that seen by Black at Singleton's factory, but inferior to it, and inferior to what he had been in the habit of making, for Singleton had so written to him, did not disclose the fact, but remarked, "there it is, examine for yourself." Black declined examining it, stating he had seen Singleton's bagging in the loom, and was satisfied as to its being of first rate quality, and with the reputation of his brand, and the trade was then completed. That it was attended with a good deal of trouble and expense to unrol bagging, and was besides an injury to its appearance, and that it was customary when a brand was favorably known in the market, as Singleton's was, to take it without unrolling, or any particular examination. That the purchase was made by Black, under the impression that it was a first rate article, and the highest market price paid for it as such.

That plating bagging was a deceptive, fraudulent practice, and was not customary. That in the New Orleans market it was the general practice to purchase from the brand, when it was known, and when it was not from the external appearance of the article. It was also in proof that the 192 pieces in contest were not only open and slazy, but full short in weight of merchantable bagging, and worth about two cents in the yard less than a good article.

The testimony conducing to establish the foregoing state of case, the question arises whether the Court upon the trial, correctly expounded the law to the jury.

Contracts of sale of property in Louisiana are governed by the law of the place.
As the contract or sale was made in New Orleans, it must be governed by the laws of Louisiana, which were introduced upon the trial without objection, in a book purporting to contain the civil code of that State, and which is considered in effect as constituting a part of the bill of exceptions, and is now before this Court.

Upon an examination of the articles in this code, to which we have been referred, and which have a bearing upon this case, we perceive nothing inconsistent with the law, as ruled by the Court below upon the subject of fraud, or in regard to the facts, which would constitute fraud in the transaction, and render the defendant liable.

The testimony, we think, conduced to prove facts, which rendered the sale fraudulent on the part of both Singleton and Pinkard. We cannot but regard the very act of *plating* as deceptive and fraudulent—as putting up the article dishonestly, and more especially in this instance.

The bagging was put into market with a brand previously well and favorably known, and was sold by the agent, without disclosing the fact, well known to him, that it was inferior to the former and usual make of the defendant. Both the brand and the sample, or the external appearance, were fallacious and deciptive. The fact that Pinkard told the purchaser to examine for himself, does not relieve the transaction from its fraudulent character. He knew the article was not what it appeared to be from its exterior, nor of the quality indicated by the brand. It cannot, under the circumstances, be presumed that he expected Black would examine it by unrolling the bolts. It would have been unusual to have done it. It is clearly to be inferred that he knew Black was purchasing with a belief that it was a first rate article, and was paying the highest market price for an article of that description.

It was the duty of Pinkard to have disclosed the fact that the bagging was not what it appeared to be, nor what Black supposed, and had every reason to suppose it was, but very different from it. That it was not a first rate, but a very inferior article. And the failure, under the circumstances, to make such disclosure, we think, was clearly fraudulent, according to the principles laid down in the Louisiana code, as well as in view of the laws of Kentucky: (*Civil Code of Louisiana, Art.* 1841,) and the explanatory rules or illustrations following.

*Margin notes:*

The practice of so putting up goods, (bagging) as to present a favorable exterior, not truly representing the interior, is fraudulent, especially where the brand of the manufacturer had before a good reputation.

It is the duty of a vendor to disclose any defect in the article which he is vending, unless it be palpable to the purchaser.

In an action on the case for fraud in the sale of personal property, neither the laws of Lousiana nor Ky., authorize the jury to assess *vindictive* damages.

The Court instructed the jury in substance, if they found the facts which we have stated the testimony conduced to prove, that the sale was fraudulent, and the defendant liable, and that the measure of damages was the loss the plaintiffs sustained, or the profits they might have made.

In a subsequent instruction, the Court said to the jury, that if fraud were proven, the jury might give vindictive damages. It should also be remarked, that the latter instruction was predicated in part upon the facts, of which we discover no proof in the record, or rather none upon the last trial. There is no evidence that it was the general habit of the manufacturers of bagging in Kentucky to *plate* it, and that such habit was known to Black, or that there was usually a general relative quality between the interior and the exterior of *plating*, which was also known to Black. But, if basing in part the instruction upon these facts were the only objection to the instruction, we should not on that account alone be induced to disturb the judgment, as it would not be calculated to mislead the jury to the prejudice of the defendant.

But we think the instruction is misleading and erroneous, and to the defendant's prejudice, in regard to the right of the jury, if fraud were established, to give vindictive damages. Such a principle would be at war with the well settled doctrine in Kentucky in cases of this kind, and we have not been able to discover any authority for it in the laws of Louisiana, Article 2523, of the *Civil Code* of that State, to which we have been referred, provides, that "the seller, who knows the vice of the thing he sells, and omits to declare it, besides the restitution of the price and the repayment of the expenses, is answerable to the buyer in damages."

This principle seems to contemplate an avoidance of the sale, and to be applicable only to a case of that kind. In the case before us the plaintiffs hold on to the thing, and seek to recover for its concealed vice or defect, according to Art. 2525. "A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the defini-

tion of fraud, and ought to be judged according to the rules laid down upon the subject, under the title of *conventional obligations.*"

In Article 1928, under the head of "Conventional Obligations," it is provided, that "when the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach on the account of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:

The second exception or modification is as follows :

"When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even where there is fraud, the damages cannot exceed this."

If in the case thus stated, smart money or vindictive damages could not be recovered, it would seem very clearly to follow that they could not be recovered in the case under consideration.

Nor are we satisfied that the jury could properly include in their finding, as it is conceded they did, the freight of the 192 pieces of bagging to Mobile and back to New Orleans, and other expenses incident to the removal. Such damages would not be an immediate and direct consequence of the defect in the bagging.

The first instruction in regard to the measure of damages in view of the laws of Louisiana, we think is applicable to the case. And that under that instruction, the jury might find the difference between $13\frac{1}{4}$ cents per yard, less two cents per yard, on account of the defective quality of the bagging, or whatever they might find it to have been, and 16 cents per yard, the price for which it was sold by Black & Muir to Blair, &c. Or in other words, that the jury might find the difference between the actual value of the bagging, in view of its defective quality at the time of the sale from Pinkard to Black, &c., and the price, 16 cents per yard, for which it was sold by the latter to Blair, &c.

Where a purchaser of property sends it back on discovering that he is defrauded and sues for damages for the fraud, he cannot recover as part of the damages, cost of transportation, and other incidental expenses. The measure of damages in an action on the case for fraud in the sale of personal property is the difference between the article as it was, and what was given for it.

It is also insisted that a new trial should have been granted, upon the ground that there was no proof as to what persons constituted the firm of Kennedy, Smith & Co. It is true the record does not contain the requisite proof of that fact, but whether in view of all the circumstances of this case, the judgment upon that ground alone should be reversed, we need not decide, as we think it must be reversed for the other errors indicated.

Wherefore, the judgment is reversed, and the cause remanded, that a new trial be had in conformity with the principles of this opinion.

*Robertson* for plaintiff; *Robinson & Johnson and J. B. Clay* for defendants.