## National Protective Legion v. Allphin, et al.

(Decided January 26, 1911.)

### Appeal from Boone Circuit Court.

Insurance Life—Action Upon Policy—Evidence—Instructions.—In an action upon two policies of insurance, where the defense which the company offered was made to turn upon whether or not the question in the application with reference to the insured's association with a person having tuberculosis, was true and the verdict upholding the policies being supported by the weight of the evidence, and the instructions correctly stating the law, the judgment must be affirmed. Under the instructions the jury could not have found for the plaintiff if they had found that any one of the answers to the questions referred to was untrue.

F. L. HOWARD and L. J. CRAWFORD, for appellant.

J. G. TOMLIN, J. L. WEST, and CLORE, DICKERSON & CLAYTON, for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On January 1, 1908, the National Protective Legion issued two policies of insurance, for $2,000 and $3,000 respectively, upon the life of James C. Allphin for the benefit of his father and mother, the appellees, B. B. and Pink Alphin. The insured died about February 21, 1909, of tuberculosis. The necessary proofs of death and loss were made out and presented to the company, and it resisted payment on the ground that the policies had been procured through fraud, in this, that in the application therefor the answers to three questions, which were material to the risk, were untrue. These questions were, as follows:

"1. How recently have you been associated with a person who had tuberculosis?" Ans. "Never."

"2. How recently have you occupied apartments that have been occupied by one who had tuberculosis?" Ans. "Never."

"3. Are you now subject to or afflicted by any disease, malformation or weakness, or have you any severe disease (except the usual diseases of childhood) other than those stated in the foregoing answers, or have you any material defect of eyesight or hearing? If so, state the date and the particulars of the same fully." Ans. "Had typhoid fever in April, 1907, lasted three weeks. Entire recovery."

Suit was instituted by the beneficiaries upon the policies, and upon the issues joined the case was submitted to a jury, which returned a verdict against the company. From the judgment predicated upon this verdict the company now prosecutes this appeal and seeks a reversal.

Several grounds are relied upon, chief of which, and in fact the only ones which we deem it necessary to consider, are, first, that the verdict is contrary to law and not sustained by sufficient evidence, and second, that the court did not properly instruct the jury.

The questions and answers thereto were material to the risk, and if the insured at the time he made this application did in fact have tuberculosis, as it is strongly insisted for appellant he did, then his answer to question number three was untrue, and the company should not be held liable on the policies. Likewise, if he had recently, or at all, been associated with a person who had tuberculosis, or occupied apartments that had been occupied by one who had tuberculosis, then his answers to these questions were calculated to mislead and deceive the company, and no recovery should be allowed.

The burden was upon appellant to establish affirmatively that these several answers were untrue. In order to establish this fact as to the first and second of these questions and answers, it sought to show that one Leslie Carroll had a tubercular abscess of the hip, and while suffering with this disease during the early part of 1907 was associated with the insured, and during the greater part of this time roomed with him at the home of one Dr. W. W. Smith, in Louisville, Kentucky, where he was being treated for same. Upon the trial it was admitted that the insured was associated and roomed with the said Carroll, but it was denied that he was suffering with tuberculosis. The proof shows that he had a very ugly abscess of the hip, and that he was taken to Louisville and operated upon about the 19th of February. Shortly after this operation he was removed to the home of Dr. Smith, and, during his stay there, roomed with the insured, who was then taking a medical course in Louisville. The wound had to be cared for and dressed almost daily, and not infrequently the insured assisted in doing this work. The physician who operated upon the hip gave it as his opinion that the abscess was tubercular in its nature. Another skilled physician, Dr. Berry, of Newport, Kentucky, testified that from the description of the abscess, which was described as a psoas abscess, he was of the opinion that it was tubercular. Dr. Smith, at whose house the young man was staying, had the pus from this abscess examined microscopically on several occasions by Dr. Vernon Robbins, of Louisville, and such examinations disclosed the presence of no tubercular bacilli. Dr. Smith testifies that he at first suspected that it was tubercular in its character, but that when the microscopic test disclosed the presence of no bacilli he changed his opinion in regard thereto. Dr. Bagby, of Walton, Kentucky, who examined the abscess before the patient went to Louisville and was operated upon, pronounced it a psoas abscess, and stated that such an abscess was usually caused by an injury. He did not know whether it was tubercular or not. Dr. B. K. Menefee, of Walton, Ky., testified that from the description of the abscess and the recovery of the patient, when considered in the light of the fact that no tubercular germs were found in the pus, it was very doubtful if the abscess was of a tubercular origin or nature. There is no evidence whatever tending to show that the insured was ever associated with anyone else supposed to be afflicted with tuberculosis, either of the lungs or otherwise, or that he

ever occupied a room or apartments that had been occupied by anyone troubled with tuberculosis.

On the third question and answer, it is shown by the testimony of Dr. Jones, the physician who acted for the company in making the medical examination, that at the time the application was made out he regarded the insured as a good risk. Early in January, following the application and issuing of the policies to him, the insured went to Louisville with his mother for the purpose of completing his medical education. About the middle of January he was troubled with a severe cough, and, upon consulting with Dr. Smith, some of his sputum was taken to Dr. Robbins for microscopical examination. This sputum contained no tubercular bacilli. A few days later a second examination was made. This was not satisfactory. But a third examination disclosed the presence of tubercular bacilli. Some time in February following, he went to Arizona, where he died the next year.

From the fact that the tubercular bacilli were found in his sputum the latter part of January following his insurance, it is most earnestly argued that he must have had tuberculosis at the time he made the application. Possibly he had; but there is no evidence that when he made this application he was not in perfectly good health; and the record is silent as to his ever having theretofore had any trouble of a tubercular nature.

As opposed to this, it is shown by the testimony of a physician, upon whose skill and learning appellant relied, that the presence of tubercular bacilli in the sputum in the middle of January would be no evidence at all that the patient was affected or afflicted with this trouble two weeks prior thereto.

These disputed questions of fact were submitted to the jury for their consideration and determination under the following instructions:

"1. The jury is instructed that by the application to defendant for insurance, James C. Allphin was asked, 'How recently have you been associated with a person who had tuberculosis?' that to the said question said appellant answered, 'Never;' that by said application said Allphin was asked another question, as follows, to-wit: 'How recently have you occupied apartments that have been occupied by one who had tuberculosis?' That to said question said Allphin answered, 'Never.' That by other questions in said application, said James C. Allphin was asked if he had been afflicted with certain

complaints at any time since childhood and that said complaints were named in said application. That in answering as to said complaints said applicant states that he had not been afflicted with any of them; that said application contained the following questions, viz: 'Are you now subject to or afflicted by any disease, malformation or weakness, or have you had any severe disease (except the usual diseases of childhood) other than those stated in the foregoing answers, or have you any material defects of eyesight or hearing? If so, state the date and the particulars of same fully.' That to the said last-mentioned question said applicant answered as follows, to-wit, 'Had typhoid fever April, 1907, lasted three weeks. Entire recovery.' If the jury believe from all the evidence that the first two above answers were or that either of them was substantially untrue and that according to the usual course of the life insurance business said application would not have been accepted and policies issued if the truth had been stated in said first two answers, or that said Allphin at the time said application was made had tuberculosis, they will find for the defendant, but if they believe otherwise they will find for the plaintiff, etc."

"2. The jury is also instructed that the question they are to try is not whether at the time he made his said application to defendant for insurance he in good faith believed he was free from disease, but that the question is whether the answers above set out were substantially true, and if they or any of them were untrue, whether according to the usual course of the business of insurance the policies or either of them would have been issued if the truth had been stated in said application."

"3. The court instructs the jury that James C. Allphin was asked the following questions, to-wit, 'How recently have you been associated with a person who had tuberculosis? To which he answered, 'Never;' that said Allphin was also asked 'How recently have you occupied apartments that had been occupied by one who had tuberculosis?' To which he answered 'Never;'' that said Allphin was also asked the following questions, to-wit, 'Are you now subject to or affected with any disease, malformation or weakness, or have you had any severe disease (except the usual diseases of childhood) other than those stated in the foregoing answers, or have you any material defect of eyesight or hearing? If so, state the date and particulars of same fully.' That said Allphin answered said question as follows: 'Had typhoid

fever April, 1907, lasted three weeks. Entire recovery.'
If the jury believe from the evidence that at the time said
Allphin answered the foregoing questions, he had not
occupied apartments that had been occupied by a per-
son who had had tuberculosis, that he had not associated
with one who had tuberculosis, during said association,
that said Allphin did not have tuberculosis, then the jury
must find for the plaintiffs.''

These, with the instruction that nine agreeing might
render a verdict, were all of the instructions given. Sev-
eral were asked for by plaintiff and defendant, but they
were refused.

We are of opinion that, as the whole defense which
the company offered to plaintiff's suit to enforce the pay-
ment of this money was made to turn upon whether or
not the three answers which the applicant made to the
questions above set out were true, no further or addi-
tional instructions were necessary, or could have, by any
possibility, thrown any light upon the questions involved,
or in any way aided the jury in arriving at a proper
and just decision. Under these instructions they could
not have found for the plaintiff if they had found that the
answer to any one of these questions was untrue. They
were as favorable to defendant as it was entitled to have
them, and there is no merit in the claim now made that
the jury was not properly instructed.

Nor can we agree with the appellant that the verdict
is flagrantly against the evidence. On the contrary, it
is supported by the weight of the evidence. While it is
true that two physicians give it as their opinion that the
abscess with which Leslie Carroll was suffering was
tubercular in its nature, one of them states that this
opinion is based upon his family history and a personal
examination of the abscess, and the other bases his opin-
ion principally upon the fact that most abscesses of this
nature are tubercular. Opposed to their view is the tes-
timony of Dr. Smith, to the effect that he had the pus
from this abscess examined on several occasions and no
tubercular germs were found therein; and Dr. Vernon
Robbins, who made the microscopical examination for
Dr. Smith, reports that he found no tubercular germs
therein. This, to our minds, is the best evidence that the
trouble with which young Carroll was suffering was
not tubercular in its nature, and we are fortified in this
opinion by the testimony of one of the eminent physicians
who has testified in this case, to the effect that the micro-
scopical test is the best known test for the discovery of

the presence of tubercular germs next to that of inoculation.

As to the third question and answer, appellant has offered no evidence whatever to the effect that, when the application was made, the insured was suffering with tuberculosis; but the jury was asked to infer that he was so affected at that time from the fact that tubercular bacilli were found in his sputum two or three weeks thereafter, and that in six weeks thereafter he went West for his health and died within a little more than a year from the date upon which the application was made. Before just complaint can be made of the finding of the jury, some positive evidence in support of appellant's contention should have been introduced. It may be that the appellant was in fact, when the application was signed, suffering with tuberculosis, and that this fact was concealed from the company, but unless some evidence was offered in support of this claim the jury would not be warranted in so holding.

Under the instructions the jury was necessarily compelled to find that the answers given to the three questions under consideration were true before they could find for plaintiff, hence it becomes immaterial whether the hypothetical questions propounded to the doctors were in due form or not, and, for this reason, the objections urged to these several questions are not passed upon.

Being satisfied that the instructions given fairly presented the question at issue to the jury, and that there was ample evidence to support its finding and verdict, the judgment is affirmed.