## Metropolitan Life Ins. Co. v. McDonald.

(Decided Nov. 22, 1932.)

WM. MARSHALL BULLITT, ROBERT LEE BLACKWELL, and BRUCE & BULLITT for appellant.

WOODWARD, HAMILTON & HOBSON and ROBERT P. HOBSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The decisive question presented by this appeal is the appellant's right at the conclusion of all of the evidence to a directed verdict.

Garland Crosson, a colored man, by written appli-

cations, dated March 12 and 28, 1928, to the Metropolitan Life Insurance Company, applied for policies of insurance on his life. On March 26, 1928, in consideration of 15 cents paid by him to the company, it issued, on the application dated March 12, and delivered, policy No. 97772790, by which it agreed to pay the beneficiary $195 upon the death of Crosson. On March 9, 1928, for the same consideration, it issued on the application of March 28, and delivered to him, policy No. 97929216, by which it agreed to pay the beneficiary $195 upon his death. The weekly premiums on these policies were paid by him to the company to, and including October 18, 1928, the date of his death. Sarah McDonald was the designated beneficiary of both policies. She made proofs of the death of the insured, submitted them to the company, when it denied its liability. This action was instituted by her to recover of it, the amounts it agreed to pay on the death of the insured, on receipt of proofs of death, and the surrender of the policies.

Crosson signed an application for each policy. He was examined by a physician subsequent to the date of each application and before the delivery of the policies. In each application he declared he had no disease of the heart.

The examining physician of the company stated in his reports to the company that he had personally examined the insured, and that he was in good health and had no disease of the heart.

The insured had made his home with the beneficiary, Sarah McDonald, for five years next before the delivery of the policies and subsequent thereto, until some time in July or August, 1928. He spent a great deal of his time at her home. He ate and slept there, and she says he was at her home in January, 1928, and not in the city hospital; that he was not sick, to her knowledge, until in July, 1928; that prior to the time the policies were delivered he had not complained of any illness; that he worked until in the month of July. A neighbor of Sarah McDonald was almost daily in the home where Crosson lived, but she did not see Crosson very often because he was working; that she did not know of his ever being sick; that he worked regularly when he could get work; that she had no knowledge of his being in the hospital at any time until in April, 1928.

On January 18, 1928, Crosson visited the clinic of the city hospital in Louisville, where he gave to Dr. Dowell Collins a history of his health and feelings. Dr. Collins examined him and diagnosed his illness as syphilitic cardiac, or leutic heart disease. Again on January 21, 1928, Crosson was at the clinic of the city hospital and gave to Dr. W. S. Randall a history of his affliction. Dr. Randall diagnosed his disease as syphilitic infection, and prescribed treatment for this disease.

In July, 1928, Crosson was a patient in the city hospital and was treated by Dr. French for a syphilitic heart. Dr. M. H. Thompson, in August, 1928, examined him at the city hospital and diagnosed his illness as syphilitic infection. To Dr. Thompson he gave a history of his disease, which he stated began with a penis sore a number of years before. The insured died of this disease in October, 1928. Considering the statements of the medical examiner of the company that Crosson had no heart disease at the time of his examinations, in connection with the other evidence in behalf of appellee, it is apparent that such evidence conflicted with the statements of the two physicians who examined him in January, 1928, and testified to the effect that he was at that time afflicted with heart disease. Thus was made an issue as to the existence and nonexistence of the disease of his heart before his signing either of the applications. Such conflicting evidence, under the prevailing rule in such cases, entitled the appellee to the submission of this issue to the jury. Penick v. Metropolitan Life Ins. Co., 220 Ky. 627, 295 S. W. 900; Metropolitan Life Ins. Co. v. Penick, 227 Ky. 490, 13 S. W. (2d) 496. But other defenses were presented by the answer, and, according to our view, were fully sustained by the evidence, without contradictory evidence in behalf of the appellee.

In his applications, the insured expressly and positively declared, "I have never had any of the following complaints or diseases, viz.: * * * syphilis. * * * I have not been under the care of any physician within three years. I have never been under treatment at any dispensary, hospital or asylum. I hereby declare that the statements recorded above * * * are true and complete, and I agree that any misrepresentation wilfully made shall render the policy void. * * *"

Immediately below the insured's signature to these declarations is the report of the physician who examined him, and reported and recommended the issuance of the policies. These reports do not show or tend to show that the insured was or was not on January 18 and 21 at the city hospital, and was not afflicted with an infectious disease. It is not shown by either of them that the medical examiner made any inquiry of the insured, or that the insured made any statements to him, other than the declarations in his applications to the company, relating to his infectious affliction. The testimony of the beneficiary and her neighbor does not show or tend to show that they had or did not have any knowledge of his affliction, or that they at any time made any inquiry of him, or that he made any statements to them concerning such affliction. It would not be expected that he would make known to these women that he had a venereal disease. The testimony of the four physicians who were introduced by the company shows that the infectious disease with which the insured was afflicted in January, 1928, was in its nature latent, without visible or marked symptoms, and "as insidious as the whisperings of the bad angel," ready to become active at any momnet, and that its presence was not discoverable by the ordinary methods of the diagnostician, without resorting to certain scientific tests, without a history of its origin and existence by the subject afflicted. The reports of the examining physician do not disclose that the insured imparted to him the history of his affliction, or that any scientific tests to discover its presence were made by him. The beneficiary and her neighbor, who was a witness in her behalf, were not qualified to discover the insured's affliction or its peculiar characteristics. In fact no evidence was offered or heard showing or tending to show that the insured was not afflicted with this venereal disease on January 18 and 21, 1928, or that he was not examined by Dr. Collins and Dr. Randall on those dates at the city hospital, when the latter prescribed treatment for him on January 21st. The examinations of the insured by Dr. Collins and Dr. Randall in January, 1928, and the existence and nature of his affliction, and that one of them prescribed treatment, were facts within his knowledge at the time of his signing of the applications, and also at the time the examinations of the insured were made by the company's examining physician. The fact that the company's physician re-

ported him in good health doubtless was due to the insured's declaration in his applications that he was free from this particular disease, and to his failure to disclose the history of it as it was known to him and as given by him to other physicians, both before and after the issuance of the policies. Crosson knew the purpose of ascertaining, by the company through its examining physician, his health, and the materiality thereof in relation to the insurance. He was aware of the object of the physician's examination, and that the purpose was to determine whether he was a fit subject to insure. Not only was such declaration false, but it was material in determining his fitness for insurance. It was his duty not only to speak the truth, but not to conceal the truth, in relation to the existence of the infectious disease.

"A false impression may consist in a concealment of what is true as well as an assertion of what is false. Faris v. Lewis, 2 B. Mon. 375; Singleton's Adm'r v. Kennedy & Co., 9 B. Mon. 222; Cresent Grocery Co. v. Vick (194 Ky. 727, 240 S. W. 388), supra; Weikel v. Sterns, 142 Ky. 513, 134 S. W. 908, 34 L. R. A. (N. S.) 1035; Eversole v. Chandler, 217 Ky. 148, 289 S. W. 215. The suppression of truth is as vicious and disasterous as a false representation. The motive is the same in either case, and the result should be the same, since it is the intention that constitutes the fraud. Ruffner v. Ridley, 81 Ky. 165; Hays v. Meyers, 139 Ky. 444, 107 S. W. 287, 32 Ky. Law Rep. 832, 17 L. R. A. (N. S.) 284, 139 Am. St. Rep. 493; Taylor v. Bradshaw, 6 T. B. Mon. 145, 17 Am. Dec. 132." See Dennis v. Thompson, 240 Ky. 727, 43 S. W. (2d) 18, 23.

The uncontradicted testimony of Dr. Collins and Dr. Randall that the insured was afflicted in January, 1928, with the specfic disease of which he declared in his applications to the company that he was free, as well as their testimony that he was at the city hospital in 1928, when treatment was prescribed for him, brings the case clearly within the general applicable rule in such cases; that is, if the insured's declaration in his applications in reference to his not having certain specific disease was untrue and was known to him at the time of the making of the applications, or receipt of the policies to be untrue, and was made by him for the purpose of deceiving the insurance company and

procuring the policies thereby, and the company relying thereon was deceived into issuing the policies by such untrue declaration, the policies are to be regarded as obtained by fraud and are void. National Council, Knights and Ladies of Security v. Dean, 191 Ky. 622, 231 S. W. 29; Grand Lodge, Brotherhood of R. R. Trainmen v. Nolan, 196 Ky. 296, 244 S. W. 759; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990.

The undoubtful, uncontradicted evidence shows that the insured's declaration in respect to his not having, in January, 1928, an infectious disease, was substantially untrue, and that the company, acting reasonably and naturally in accordance with the practice u s u a l with life insurance companies, under similar circumstances, would not have accepted his applications and issued the policies to him if the substantial truth concerning his disease had been stated in his declaration, even though it was not made with a knowledge of its falsity or with the intention to mislead or deceive the company. New York Life Ins. Co. v. Long, 199 Ky. 133, 250 S. W. 812; Security Life Ins. Co. v. Black's Adm'r, 190 Ky. 23, 226 S. W. 355; National Protective Legion v. Allphin, 141 Ky. 777, 133 S. W. 788; Etter v. National Life & Accident Ins. Co., 228 Ky. 399, 15 S.W. (2d) 242. As to these last two issues, the appellant was plainly entitled to a directed verdict, even though the evidence was conflicting as to the issue of the existence of the insured's heart disease. Insurance Co. of North America v. Gore, 215 Ky. 487, 284 S. W. 1107; Russell Lumber & Supply Co. v. Grooms, 231 Ky. 544, 21 S. W. (2d) 835; Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. (2d) 630; City of Louisville v. Hale's Adm'r, 238 Ky. 182, 37 S. W. (2d) 20.

The evidence shows that on April 6 or 8, 1928, after the application was made in March, 1928, for the last policy, and before it was delivered on April 9, Crosson was treated by a physician for the disease which caused his death in the following October, but that he failed to disclose to the company this fact. It is argued that the policy speaks as of the date of its delivery, and that the misrepresentations made by the insured in the last application are continuing in their nature until the policy was delivered, and that the law imposed the

duty on the insured to disclose the existence of the disease and the treatment by the physician between the date of the application and the delivery of the last policy. Having decided that the company is entitled to a direct verdict on other grounds, it is not necessary to consider this question properly to dispose of the case.

The judgment is reversed for proceedings consistent with this opinion.