## Northwestern Mut. Life Ins. Co. v. Yoe's Ex'r.

June 7, 1940.

Eugene Hubbard, Judge.

Wm. Marshall Bullitt, Robt. Lee Blackwell, and Bullitt & Bullitt for appellant.

Robert P. Hobson and Woodward, Dawson & Hobson for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, Northwestern Mutual Life Insurance Company, is appealing from a $2,000 judgment in favor of the executor of the estate of Adele E. Yoe as the beneficiary of a $2,000 policy of insurance on Miss Yoe's life.

The insurance company denied liability on the policy by reason of fraudulent and material misrepresentations which it claimed the insured made in her application on which the policy was based. Specifically, the

company plead that she falsely stated in her application that she did not have cancer and was in good health and, further, that in answer to a question as to what physicians she had consulted in the last five years she made the answer that she had consulted Dr. H. C. McCarty, in December, 1934, for a transient cold, of three or four days' duration, followed by complete recovery. It was alleged that in fact she was in bad health and had cancer at the time of the application and that she had consulted numerous other physicians within the last five years, and that such answers were made by her falsely and fraudulently with the intent to deceive the company, and that such misrepresentations were material to the risk. Since we have concluded that the evidence shows conclusively that false representations were made as to physicians consulted by the insured and that these misrepresentations were material, it becomes unnecessary to discuss the issue of fraudulent misrepresentations as to good health.

Facts established beyond dispute are that in April, 1928, Miss Yoe consulted Dr. Irvin Abell at which time she complained of attacks of pain and general discomfort, of which she was always conscious, in the lower abdominal or pelvic region, which were different in character from the pains which she suffered during menstrual periods, which the physician thought might be due to ovarian trouble. Dr. Abell at that time suggested a complete vaginal examination which the patient declined to permit. This examination was more than five years prior to the application and consequently has no bearing on the falsity of the answers as to physicians consulted by the insured but was admitted in evidence as having a bearing on whether or not the insured was in good health and on the question of the fraudulent character of her representations.

On August 27, 1932, she consulted Dr. H. V. Noland at which time she complained of painful menstruation, a pelvic type of pain, and general discomfort in the lower abdomen, which this physician thought might be due to a misplaced uterus resulting in mechanical interference with the menstrual flow or from lack of activity of the pituitary gland. At this time the insured was complaining of overweight and also complained that she was suffering from gas and belching. She remained under treatment by Dr. Noland for a period of

seven months during which period she consulted him fourteen times, one or more times in each month except December and February, the last visit being on March 28, 1933.

On April 27, 1933, just óne month after Dr. Noland last attended her, she consulted Dr. Alice Pickett to whom she gave the history of pains in the left ovarian region and exhibited an X-ray picture showing intestinal adhesions and informed her of a pituitary extract treatment prescribed by Dr. Noland. She also informed Dr. Pickett of Dr. Abell's request for permission to make a pelvic examination. Dr. Pickett advised her again that a vaginal examination should be made but again the insured declined.

On December 31, 1934, she visited Dr. H. C. McCarty at which time she again complained of the same symptoms of menstrual disorders and overweight and in addition gave a history of frequent colds, stating that she had had a cold about once a month during all the previous year. She disclosed to this physician that Dr. Noland had found that she had a low rate metabolism. Dr. McCarty diagnosed her trouble as an irritation of the lungs, a condition of the bronchial tubes, and disfunction of the pituitary gland regulating the menstrual function. He gave her glandular injections in the attempt to regulate this disfunction and to help her reduce but when he last saw her on March 16, 1935, she was still gaining weight and he discontinued the glandular treatments. She paid five visits to this physician during the two and a half months' treatment by him.

The insured died on October 20, 1938, from cancer of the rectum, which had extended into the abdomen. Dr. Abell, whom she again consulted in August, 1938, testified that on this visit she informed him that two years before coming under observation she had had severe abdominal cramps which she thought were due to indiscretion in diet but that during the two years she had several recurrences which apparently bore no relation to food or to menstrual periods, each of which lasted about a week and were accompanied by pain and vomiting. It will be observed that the beginning of this two-year period was approximately four months prior to the policy application.

It is thus seen that the insured made false representations in her application as to physicians consulted

by her in the last five years. She totally omitted to mention one physician under whom she underwent treatment for a period of seven months and another physician to whom she paid a visit just one month after finishing this course of treatment, this latter visit indicating, of course, that she had not obtained a satisfactory state of health by the prolonged treatment of seven months. Her answer that she had consulted Dr. McCarty in December, 1934, for a common cold lasting three or four days and eventuating in complete recovery was false in two particulars, that is, as to the number of visits paid this physician and as to the extent of the indisposition from which she was suffering at the time she was under treatment by him. The question propounded to the insured was a simple question calling for a simple statement of facts and imposed on her no responsibility for determining whether or not the medical attention mentioned by her included treatment for minor or for serious ailments, and, by minimizing Dr. McCarty's treatment of her and the condition for which he treated her, she thereby, no doubt, threw the company off guard and induced it not to make inquiry through this physician.

As false representations were made to the company by the insured in her application, the company was not liable on the policy if these representations were material. The rule is clearly established in this state 1) that where a misrepresentation is fraudulently made by the insured to procure a policy of insurance the element of materiality is unnecessary and 2) that the element of fraud is unnecessary when the representation is material to the risk. National Life & Accident Insurance Co. v. Fisher, 211 Ky. 12, 276 S. W. 981; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990; Metropolitan Life Insurance Co. v. McDonald, 246 Ky. 109, 54 S. W. (2d) 625; Metropolitan Life Insurance Co. v. Hutson, 253 Ky. 635, 69 S. W. (2d) 742. Therefore, if the false representations made by the insured were material to the risk no recovery could be had on the policy.

The standard by which materiality is to be determined is the action which insurance companies generally would have taken on the application, when acting in accordance with their usual practice and usage, if the truth had been told. New York Life Insurance Co. v.

Long, 199 Ky. 133, 250 S. W. 812; Globe Indemnity Co. v. Daviess, supra. If the insured makes a material misrepresentation the policy is avoided and whether or not a mis-statement is material to the risk is to be determined by the jury acting not upon what it may think about the materiality of the false representation but by what those engaged in the life insurance business, acting reasonably and naturally in accordance with the usual practice, among life insurance companies, would have done with the application if they had known the truth. Commonwealth Life Insurance Co. v. Goodknight's Adm'r, 212 Ky. 763, 280 S. W. 123.

It was proven by the medical director and assistant medical director of the appellant that they relied on the truth of the answers made by the insured and had no further information concerning her. Appellant's medical director also testified, in response to a question directly and fairly reflecting the insured's condition, as reported by her to her physicians and as testified to by them, that under the practice and usage of life insurance companies generally an application containing such information would not have been accepted and it would have led to the rejection of the risk, or, at least, that a re-examination would have been ordered and no policy issued unless it was established that a complete cure had been effected. This testimony was not contradicted and therefore the materiality of the misrepresentation made by the insured was not a matter in issue. Both the falsity of the representations and the materiality thereof were undisputed facts and in these circumstances there was no issue to submit to the jury. The facts not being in dispute, it was the province of the court to rule thereon.

Counsel for appellee are insistent that this case is governed by the decision in Pacific Mutual Life Insurance Co. v. Arnold, 262 Ky. 267, 90 S. W. (2d) 44, 49. In that case the insured stated in the application that he had not consulted, or been treated by, a physician for any ailment or disease since childhood. It was shown that for ten or twelve years the insured had been going to the Battle Creek Sanitarium every year for rest and recreation and that he sometimes went through the clinic for examination but was never treated for any ailment or disease. There was a conflict in the testimony in that case as to the materiality of the misrepresenta-

tions because three physicians who qualified as life insurance experts and had been medical examiners for insurance companies, testified that the application would have been accepted even if the facts shown in evidence had been disclosed in the application. In that opinion the court said:

"We will not hold that because a man had gone to a health resort for rest and recreation periodically for years, or as a matter of precaution had had a physical examination which disclosed minor infirmities having no causal relation whatsoever to the condition arising 12 years later, he committed a fraud, or that it constituted sufficient evidence to be submitted to a jury on that point."

In the instant case, however, there is no conflict in the testimony either as to the falsity of the representations made by the insured or as to the materiality thereof. No qualified witness expressed the opinion that the facts forming the misrepresentations would not be regarded as material to the risk under the rule stated above. In this state of the evidence the appellant was entitled to a directed verdict. All other questions are reserved.

Judgment reversed, with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.