## Northwestern Mut. Life Ins. Co. v. Yoe's Ex'r.

Sept. 26, 1941.

Bruce & Bullitt, Wm. Marshall Bullitt and R. Lee Blackwell for appellant.

Woodward, Dawson & Hobson and R. P. Hobson for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This is a second appeal and as the issues raised by the pleadings and the evidence adduced thereon in the first trial appear in the former opinion reported in 283 Ky. 406, 141 S. W. (2d) 554, it will not be necessary to restate them. In the first opinion it was written that the falsity of the insured's statements as contained in her application was admitted, and as there was no conflict in the evidence as to such false representations being material, there was nothing to submit to the jury, and a peremptory instruction should have been given in favor of the company. The court having reached the conclusion in the former opinion that the falsity and materiality of the representations contained in the insured's application were not denied in the proof, it was not deemed necessary to determine whether or not such representations were fraudulent, and that question was expressly reserved.

On the second trial plaintiff introduced evidence to the effect that the false representations were immaterial and the case was submitted to the jury under appropriate instructions on that issue as well as on the issue of whether such representations were fraudulently made by Miss Yoe. A verdict was returned for the full amount of the policy, $2,000.

The company is insisting upon a reversal of this judgment upon two grounds. First, the two witnesses, Drs. McCarty and Jefferson, who testified for the executor that the false representations were not material, did not qualify as knowing the practice prevailing among life insurance companies generally in determining what risks were desirable and what were undesirable; and

they did not testify as to what was the practice of life insurance companies generally in passing upon such risks, citing New York Life Ins. Co. v. Long, 211 Ky. 656, 277 S. W. 978; Provident Sav. Life Assur. Co. v. Whayne's Adm'r, 131 Ky. 84, 93 S. W. 1049, and other like cases. The company contends no competent evidence was introduced by the executor that the representations were immaterial and the company's proof shows they were material, hence it was entitled to a peremptory instruction under the first opinion that the false representations were material. Second, the court should have sustained its motion for a peremptory instruction at the conclusion of all the evidence since it was shown without contradiction that the policy was obtained by the false and fraudulent misrepresentations of Miss Yoe.

Insofar as we are able to determine, the only difference in the evidence heard on the second trial from that introduced on the first is insured's executor proved on the second trial by Drs. McCarty and Jefferson that they were medical examiners in Louisville for life insurance companies and had they known the truth relative to the false representations contained in the application they would have recommended that Miss Yoe's application be accepted. In other words, they testified that the false representations were not material to the risk. The company vigorously objected to the competency of the testimony of these two doctors on the two grounds set out in the preceding paragraph. As we have arrived at the conclusion that such false statements were knowingly made by Miss Yoe, therefore the insurance contract was made void by her fraudulent representations, it is unnecessary for us to determine whether or not the testimony of Drs. McCarty and Jefferson was competent. As stated in the former opinion, the rule is ''that where a misrepresentation is fraudulently made by the insured to procure a policy of insurance the element of materiality is unnecessary and that the element of fraud is unnecessary when the representation is material to the risk.'' [283 Ky. 406, 141 S. W. (2d) 555.]

In Metropolitan Life Ins. Co. v. McDonald, 246 Ky. 109, 54 S. W. (2d) 625, 627, the rule is clearly and succinctly stated as to what constitutes a fraudulent representation in an application for life insurance.

"If the insured's declaration in his applications in reference to his not having certain specific disease was untrue and was known to him at the time of the making of the applications, or receipt of the policies to be untrue, and was made by him for the purpose of deceiving the insurance company and procuring the policies thereby, and the company relying thereon was deceived into issuing the policies by such untrue declaration, the policies are to be regarded as obtained by fraud and are void."

The former opinion states Miss Yoe's representations in her application were false as to the number of physicians she consulted within five years before applying for the insurance, the number of visits paid the one physician she named, and as to the indisposition from which she was suffering at the time she was under his treatment. That these representations made by Miss Yoe were false is now the law of this case. The uncontradicted testimony of Dr. Westrand, medical examiner for the company, and of Mr. Ryan, who assisted him in passing upon applications, is that the company in issuing the policy relied upon the false representations made by Miss Yoe. We must now determine if there is any contrariety in the evidence as to whether or not Miss Yoe knew her statements were false and made them to deceive the company into issuing the policy.

There is no conflict in the evidence as to the ailments from which Miss Yoe had suffered, the treatment and advice received and the physicians who gave same, or as to the answers she made to the questions contained in the application. Dr. McCarty testified that in the proof of loss he signed as attending physician it was shown Miss Yoe had consulted him for stomach trouble and nervousness for the past three years and that she had some symptoms of gastro-intestinal disorders with nausea, etc., for two or three years. As the application was dated Dec. 24, 1936, and the death certificate, Nov. 2, 1938, the symptoms of gastro-intestinal disorders and the nausea must have occurred so shortly before application was made for the insurance as to make it inconceivable that Miss Yoe could have forgotten them when she stated Dr. McCarty had treated her for a transient cold.

Her omission to state that she had been treated by Drs. Noland and Pickett, as well as by Dr. McCarty,

within the last five years was perhaps not as strong evidence of her fraudulent intent as her statement that Dr. McCarty had treated her for a transient cold of several days' duration, when in fact she complained to him of menstrual disorder, of overweight, stomach trouble, nausea, nervousness and disclosed to him that Dr. Noland had found she possessed a low metabolism. We regard as quite significant the fact that she mentioned this cold for which Dr. McCarty treated her while no mention was made of the more serious maladies about which she complained to him, or of the fact that in 1933 Dr. Noland recommended a vaginal examination be made. In the former opinion it was written this statement no doubt threw the company off guard and caused it to make no inquiry through Dr. McCarty. Dr. Noland testified he considered her refusal to follow his advice and have a vaginal examination was because of modesty and he sent her to Dr. Pickett, a woman doctor. She refused to let Dr. Pickett make a vaginal examination yet no mention was made of Dr. Pickett in her application; nor was mention made of the fact that this physician made a rectal examination of the insured. Dr. Noland in 1933 gave her an ovarian extract once in January and twice in March, and while this was just about one and a half years before Dr. McCarty treated her she made no mention of it, but did mention Dr. McCarty treated her for a cold. We agree with the statement in appellant's brief that her answers in the application were "more concealing than revealing."

It was written in Metropolitan Life Ins. Co. v. McDonald, 246 Ky. 109, 54 S. W. (2d) 625, 626:

"A false impression may consist in a concealment of what is true as well as an assertion of what is false. [Authorities.] The suppression of truth is as vicious and disastrous as a false representation. The motive is the same in either case, and the result should be the same, since it is the intention that constitutes the fraud."

It was Miss Yoe's duty not only to speak the truth concerning the condition of her health but not to conceal the truth.

It is earnestly argued by counsel for the executor that the failure of Miss Yoe to give the name of but one of the several physicians who treated her within the

period of five years before she applied for this insurance shows no fraudulent purpose, as any person might overlook doing so; that the fact her application showed a tonsillectomy in 1933 and in another place showed she agreed that Dr. McCarty might be consulted as to her physical condition indicates there was no fraudulent intent on her part. Much ado is made of the fact that Miss Yoe's answers to questions in the application were not written by her but by the company's medical examiner, Dr. Spears. But her application certified directly above her signature that her answers were correctly recorded. As Dr. McCarty is the only physician named in her application, the natural inference would be that he performed the tonsillectomy, rather a minor operation. And had she not agreed that he might be consulted as to her physical condition, it is apparent the company's suspicion would have been aroused. The argument by the executor's counsel that the application shows Miss Yoe had no intention to deceive is not convincing.

From this record Miss Yoe started consulting Dr. Abell in 1928 for pains in the abdomen and a slight vaginal discharge and he suggested a vaginal, pelvic and rectal examination, which she refused to have made. In 1933 she consulted Dr. Noland for similar trouble and he recommended the same examination as did Dr. Abell. She again refused to have the examination made. In 1933 Dr. Noland sent her to Dr. Pickett, who also recommended a vaginal examination which she again refused to have made. In 1934 and 1935 Miss Yoe was under the care of Dr. McCarty, who testified she was having trouble with her menses, which he attributed to her pelvic organs and her ovaries, with perhaps a pituitary disability contributing thereto. When she failed to mention that Dr. Noland or Pickett treated her (Dr. Abell's treatment was more than five years before her application for insurance, hence not material) or the ailments for which they treated her, and stated that the only doctor she had consulted within five years was Dr. McCarty and that he had treated her for a transient cold, we are forced to conclude that her false answers were made knowingly and for the fraudulent purpose of deceiving the company and procuring the policy. No unbiased mind can read the uncontradicted facts contained in this record and arrive at any other conclusion. Where every reasonable mind would draw the same con-

clusion from the undisputed facts, a peremptory is required. New York Life Ins. Co. v. Dean, 226 Ky. 597, 11 S. W. (2d) 417; Wood-Heck v. Roll, 183 Ky. 128, 208 S. W. 768. Since the Company relied upon such false representations the policy must be adjudged to have been obtained by fraud.

Here the undisputed testimony is as clear and convincing that the false statements contained in Miss Yoe's application were fraudulently made as is the evidence of fraud in Metropolitan Life Ins. Co. v. Hutson, 253 Ky. 625, 60 S. W. (2d) 742, and Metropolitan Life Ins. Co. v. McDonald, 246 Ky. 109, 54 S. W. (2d) 625, where it was written that the trial judge should have peremptorily instructed the jury to find a verdict for the defendant insurance company on account of fraudulent misrepresentations made by insured's application in obtaining the policy.

The judgment is reversed with directions that on another trial if the testimony is substantially the same, the court should direct a verdict for the company on the ground that insured's false statements in the application were knowingly made for the fraudulent purpose of obtaining the policy.