## Inter-Ocean Casualty Co. v. Davis.

May 21, 1943

As Modified on Denial of Rehearing

April 21, 1944

468

Kenneth H. Tuggle and Tuggle & Tuggle for appellant.

Victor A. Jordan and H. H. Owens for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing in part and affirming in part.

On December 2, 1938, appellant issued to appellee a health and accident insurance policy providing, among other things, a disability indemnity of $100 per month. Claiming that he was entitled to $125 for sickness resulting from accidental burns suffered on May 12, 1939, and to $140 for total disability from another illness which began on or about December 1, 1939, appellee instituted this action against appellant on January 13, 1940, and, by an amended petition filed on March 24, 1941, increased his demand for total disability benefits to $1,573 covering the period from December 1, 1939, to the date of the amendment. The appellant, in addition to denying the appellee's disability, defended on the ground that appellee, in his application for the insurance, had made false answers to questions material to the risk, which latter defense appellee sought to avoid by pleading, among other things that the application had not been attached to or incorporated in the policy, and hence could not be introduced in evidence or relied on as a defense; that he had truthfully answered the questions contained in the application when they had been read to him by appellant's agent; that the latter had written the answers; and that appellee did not read them or the application after it had been so prepared.

The jury under instructions which are vigorously criticized by appellee, returned a verdict for appellant; but the Court, while it dismissed appellee's petition and awarded appellant its costs, refused to cancel the policy, although appellant had asked for that relief in its pleadings. Instead, he entered a judgment reciting that the question, whether the policy should be cancelled, had been reserved by the Court, and that the Court's decision was that the policy remained in full force and effect, and that appellant should accept the tendered premiums, which it had refused to accept, and all future premiums tendered in accordance with the terms of the policy. A later judgment, which appellant insists was gotten into the record without its or the Court's knowledge, recited that the question, whether the policy should be cancelled, had been reserved by agreement; that appellee was in sound health when the policy was delivered; that the application had not been attached to nor incorporated in the policy when it was finally delivered to appellee; and that appellee was entitled to a permanent injunction requiring appellant to accept the premiums and continue the policy in force until such time as appellee might be able to obtain similar insurance. We find nothing in the record to support the recital that the question, whether the policy should be cancelled had been reserved for the Court's decision by agreement, nor is any reason for the entry of a second judgment apparent. It is obviously designed to militate against the full effect of the jury's verdict and to enable appellee to press further claims against appellant for subsequent periods of alleged disability; and we prefer to believe that it was entered without the Court's knowledge. From it and the preceding judgment denying a cancellation of the policy, the Insurance Company has appealed, and appellee has asked, and been granted, a cross-appeal from the judgment dismissing the petition entered upon the jury's verdict.

It is conceded that when appellee received the policy, a copy of the application was attached. At that time it contained the following questions and answers:

"9. What is your average income per month? (Answer) $350 gross.

"Does it exceed the gross amount of monthly indemnity under all policies carried and now applied for by you? (Answer) Yes.

"10. What accident, health or benefit insurance do you carry or now have pending? (State companies and amounts) (Answer) Acc. World insurance $100.00 per month.

"11. Has any application for life, accident or sickness insurance been declined, postponed or withdrawn or policy cancelled or renewal refused? State particulars. (Answer) No.

"12. Have you ever made claims for indemnity for accident or sickness? If so state particulars. (Answer) No."

"14. Are your habits of life, and have they always been, correct and temperate, and are you free from deformity, infirmity or disease, and in good health and sound condition, mentally and physically? (Answer) Yes.

"15. Have you now or have you ever had Tuberculosis, Paralysis, Rheumatism, Neuritis, Appendicitis, Hemorrhoids, Hernia, Vericose Veins, Epilepsy, Fits, Syphilis, Heart Disease, Kidney or Bladder Trouble, Peritonitis, Asthma, Hay Fever, Tonsilitis, Goitre, Cancer, or any mental disorder, impairment of sight or hearing, or any other bodily defect or infirmity? If so, state particulars. (Answer) No."

On December 21, 1938, appellee wrote appellant the following letter:

"J. Leonard Davis
"Attorney at Law
"Barbourville, Ky.

"December 21, 1938.

"Inter-Ocean Casualty Company
"Executive Offices.
"Cincinnati, Ohio,

"Gentlemen:

"Re: Policy No. 480446 — On life of J. Leonard Davis

"I notice in looking over the phostostatic copy of the application in this policy, that answers to questions 11 and 12 are incorrect. Both answers to these questions should be 'yes' instead of 'no' And they were so answered yes, when Mr. Smith, your representative,

asked me relative to the same. Therefore, I am herewith returning said policy so that the same may be corrected. When this policy has been corrected, please return it to me, or if you are unable to issue this policy as applied for, please return to me the $60.00 annual premium.

"I am in perfect health. I have never been in a hospital for treatment, and for the past twenty-five years I have only had a very few short minor sick spells of very short duration. I have never had a serious injury. I have had disability insurance against sickness due to disease and accident for the last several years, and probably within the last twenty-five years I have drawed seven or eight small claims (and no claims during my entire lifetime ever exceeded two hundred dollars). I received an injury last April to my ankle (dislocated ankle) and drew a small claim from the World Insurance Company of Omaha, Nebraska, I drew sixty-eight dollars. During this period of time (twenty-five years) I do not recall all of the names of the companies that I have had health and accident insurance with. However, you can put a photostatic copy of the above information and make it a part of the above policy No. 480446.

"Very truly yours

"(Signed) J. Leonard Davis
"J. Leonard Davis

"JLD: aw
"Encl: 1 Policy."

The proof showed, and appellee admitted, that he had been treated for tuberculosis when he was eleven years old; that he had suffered from kidney disease or nephritis over a period of years; that he had suffered from tonsilitis and had his tonsils removed; and that he knew that some insurance companies regarded persons who had had tuberculosis as non-insurable. He also admitted that he had in force, at the time he made his application to appellant, similar policies providing sickness disability benefits aggregating $175 per month. Asked why he did not correct the other misstatements in his application at the time he corrected the answers to Questions 11 and 12, he said:

"A. I just—about the first question, except my age and occupation, which I came to I saw right there that those two questions were wrong and I immediately

wrote them about those questions, and I did not take time to go into those other answers. Answers to questions 11 and 12 were wrong the first I came to on the application, except questions on my age, occupation and birth and so on, and I immediately wrote about those two questions.

"Q. You just read down to question 13 and quit there, and wrote your letter. A. When I looked at that it kindly made me mad, and I did not go into details any further. I wanted the facts to go in that to my answers.

"Q. If you wanted the facts to go in your answers to the application, why didn't you have them correct question 15? A. I undertook that and did that later on with Mr. Smith.

\* \* \* \* \* \* \*

"Q. You want the jury to understand you to say you read this application, or a photostatic copy of it after it came back and you read to question 13, and you saw two of them were wrong and you did not read any more of them at that time to see if the answers to the other questions were wrong, but stopped there before answering others? A. That is right. I began checking all the questions and it seemed they were all right until I got to those two and I says 'these questions were wrong'. I did not study the other questions or look at them in particular, just saw they answered 'No,' when they should be 'yes,' and I wanted them to know that."

Appellant proved by undisputed testimony that if it had been disclosed in the application that appellee had suffered from nephritis or tuberculosis, neither it nor any similar company in the ordinary course of its business would have issued the policy. Its representative also testified that no such company would have issued a policy of that type if appellant had disclosed the true amount of similar insurance he was carrying. Other misrepresentations are claimed, but since appellant, by changing the answers to questions 11 and 12 from "No" to "Yes" after receiving appellee's letter of December 21st, must be held to have waived any misstatements contained in the answers to these questions, we shall consider only the effect of appellee's letter of December 21st, and the answers to the other questions which we have quoted.

The inevitable effect of the letter was to emphasize the truth of appellee's answers to questions 10, 14, and 15, all of which were either proven or admitted by appellant to have been false. His testimony that the incorrect answers were written into the application by appellant's agent, Smith; that he did not discover the falsity of the answers to questions other than 11 and 12 until after he had written the letter of December 21st; that he than took the policy to the agent and asked him to send it to the Company for further correction; that he relied on Smith's subsequent statement that this had been done; and that no copy of the application was attached to the policy when it was returned to him by Smith, is not only not corroborated by Smith, but unavailing as an avoidance of the defense pleaded in view of appellee's obvious lack of good faith. Commonwealth Life Insurance Company v. Spears, 219 Ky. 681, 294 S. W. 138. While the letter purported to correct the answers to questions 11 and 12, it, in effect reaffirmed the answers which had originally been made to questions 14 and 15, as will be observed from the paragraph beginning "I am in perfect health" and containing the statement, "For the past twenty-five years I have only had a very few short minor sick spells of very short duration." Even if we should accept appellee's statement that "it kindly made me mad" when he discovered the errors in answers to questions 11 and 12, and hence did not read further, and, in his letter, correct the answer to question 15, his explanation does not account for his attempt to make the Company believe that he was an exceptionally fine risk, which a truthful answer to question 15 would have disclosed he was not. Neither is it apparent why he should have deemed the correction to his answers 11 and 12 of sufficient importance to cause him to write a letter to the Company, and later, when he claims to have discovered the incorrectness of the answer to question 15, why he should have contented himself with merely calling the agent's attention to the alleged error, and relying upon him to have it corrected.

But, be this as it may, appellee agreed by the express terms of the application that the policy should be based upon his representation of the facts, and the policy contained the statement, "no agent has authority to change this policy or to waive any of its provisions. No change in the policy shall be valid unless approved

by an executive officer of the Company and such approval be indorsed thereon.'' Appellee seeks to avoid the effect of these stipulations by urging that Smith, because of a provision in the policy that it should not be binding upon the Company until countersigned by an authorized agent, was more than a soliciting agent and had authority to waive the provisions of the policy. If we should concede the correctness of the principle contended for, it would, nevertheless, be inapplicable here in view of appellee's non-reliance upon any supposed authority of the agent when his indignation moved him to request the Company to correct two of the several false answers which he claims the agent had inserted in the application. Having elected to deal directly with the Company when he discovered comparatively minor errors in the application, the slightest degree of good faith would have required him to inform the Company of the vital errors which he claims to have later discovered, rather than rely on the agent whom he had previously discovered was willing to falsify an application to the detriment of his principal. Lacking good faith, appellee cannot rely on a principle evolved to protect those who act in good faith.

Nor can he escape the consequences of his conduct by claiming that a copy of the application was not attached to the policy at the time he states Smith redelivered it to him. In any event, it was attached to the policy when it was issued, and also at the time the policy was returned to the appellee by the Company after it had made the corrections in the answers to questions 11 and 12. Appellee had every opportunity to inspect it, and testified that he did so, and thus the purpose of KRS 297.100 (KS Sec. 656), requiring a copy of the application to be attached to the policy as a condition to its being received in evidence, was fully accomplished.

Our conclusion is that the facts disclosed by the testimony bring this case squarely within the rule that where, as here, the conclusion is inescapable that the false answers by an insured to questions contained in the application on which an insurance policy was issued constituted misrepresentations material to the risk, or where the facts indisputably point to the conclusion that the false answers were fraudulently made with the intent to deceive, the insurer is entitled to a peremptory instruction. Ford v. Commonwealth Life Insurance Co.,

252 Ky. 565, 67 S. W. (2d) 950; Northwestern Mutual Life Insurance Co. v. Yoe's Ex'r, 287 Ky. 590, 154 S. W. (2d) 559. It follows that the Company should not have been required to renew the policy after the expiration of the one year term for which it was issued.

Judgment reversed on original appeal, and affirmed on cross-appeal.