## National Life & Accident Insurance Company v. Fisher, et al.

(Decided October 30, 1925.)

### Appeal from McCracken Circuit Court.

1. Insurance—Immaterial that Insured Made no False Answers in Application, where he Failed to Disclose the Whole Truth.—In Insurer's suit to cancel life insurance policy, that insured made no false or untrue answers in any questions contained in application held immaterial, where he failed to disclose the whole truth.

2. Insurance—Statute Providing that Insured's Statements in Application Shall be Representations and Not Warranties Construed.—Kentucky Statutes, section 639, providing that insured's statements in application shall be deemed representations and not warranties, and that no representation, unless material or fraudulent, shall prevent a recovery on the policy, means that if a representation is made and it is untrue and material it taints the contract, whether fraudulent or not, and if untrue and fraudulent, it taints the contract whether material or not.

3. Cancellation of Instruments—Insurer Held Entitled to Maintain Action for Cancellation of Life Policy Because of Mistake.—Insurer held entitled to maintain action for cancellation of life policy, where it appeared that a mistake was made in the contract as to a fact material to the risk assumed by insurer, and that as soon as it discovered such mistake it tendered back the premium and began this action, insurer being without any adequate remedy at law.

C. C. GRASSHAM for appellant.

REED & BURNS for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant, whom we will refer to as the plaintiff, began this action against the appellees, whom we will refer to as the defendant, in an effort to obtain a cancellation of a $5,000.00 policy of insurance which it had

written upon the defendant's life, and having been unsuccessful in the trial court, it has appealed.

It appears that the defendant lived and was engaged in business in McCracken county at a point called Maxon, and on January 3, 1921, he had driven to Paducah, a distance of about eight miles, and had returned to his home.

That was a very cold day, and he said that before he reached home his head began to swim, and when he got out of his car he could scarcely stand alone. He got into the house and his wife and daughter-in-law assisted him to bed. Dr. C. C. Morris, a neighboring physician, was called and attended the defendant that day and the next.

On December 22, 1922, defendant applied to the plaintiff for $5,000.00 insurance on his life. He was examined that day and in his examination, after being asked a number of questions about specific ailments, was then asked a general question about having consulted a physician, this question and answer being:

> "7-C. Have you ever consulted a physician for any ailment or disease not included in your above answers?
> "C. Yes, tonsilitis, 1, 1913, 3 days; mild; recovery."

Other specific questions were then asked him, which he answered; among these was this one:

> "10. State names and addresses of physicians ever consulted and give the occasions by reference to question numbers and letters above?
> "7-C. Dr. T. Coleman (dead)."

The defendant's application for insurance was approved and on January 6, 1923, plaintiff issued and sent to its agent at Paducah, for delivery to defendant, two policies, (1) a policy of $5,000.00 for which defendant had applied, (2) a policy for $10,000.00 which the plaintiff instructed its agent to try to induce the defendant to take in addition to the $5,000.00, if possible, or in lieu of the $5,000.00 if he would not take them both, and to be returned to the plaintiff if defendant could not be induced to take over the $5,000.00.

A son of defendant was then in the employment of the plaintiff as an insurance agent, and the plaintiff insisted that this son should induce his father to take this

additional insurance.   The son was unable to do so.   The defendant had another son who was a preacher, and these two sons, the preacher and the agent, told the plaintiff's chief agent at Paducah, that if he would return this $10,000.00 policy to the plaintiff, and the plaintiff would send a policy of $5,000.00 upon the life of the defendant, payable to the preacher son, and a policy of $2,500.00, payable to the agent son, they would take such policies on the life of their father, and pay the premiums on them. That was agreed to and the $10,000.00 policy was returned to the plaintiff's chief office for that purpose. Shortly after that the plaintiff's chief agent in Paducah saw a newspaper account of the defendant's having fallen in a bank in Paducah.  He at once notified the plaintiff of what he had learned, and to not send these additional policies until an investigation had been made.  Plaintiff made an investigation, and learned that on February 3, 1923, defendant had fallen in the bank in Paducah, and was unconscious for some time.   The physician who attended the defendant then, said that his eyes were turned to the left; that he was practically pulseless; that there was no motion in his right arm or leg, and that he was unconscious.   He further testified that to all appearances, the defendant was suffering from a blood clot on the left side of his brain.   Defendant recovered in a few days, and shortly thereafter, the plaintiff tendered to defendant $236.85, which he had paid as premium on the $5,000.00 policy, and requested him to return it.   Defendant declined to do so, and upon March 7, 1923, plaintiff began this action in equity, in an effort to secure a cancellation of the policy, which suit resulted in the judgment appealed from.

There is some conflict in the evidence as to whether the defendant's trouble on January 3, 1921, was due to vertigo or to a light blood clot, but it is not necessary to bother about that conflict, as the evidence abundantly shows that if the plaintiff had been told that the defendant had suffered from vertigo as claimed by the defendant, it would, acting reasonably and naturally, according to the custom and practice prevailing among life insurance companies, have declined to issue a policy.

It is insisted that the defendant made no false or untrue answers to any question contained in the application.   It is true that he did not directly give any false information, but he did fail to disclose the whole truth,

which amounts to the same thing. It is insisted that section 639 of the statutes provides that these statements in an application shall be deemed and held representations and not warranties. That is true, but the statute further provides that no representation, unless material or fraudulent, shall prevent a recovery on the policy. That means that if a representation is made and it is untrue and material, it taints the contract, whether fraudulent or not, and if untrue and fraudulent, it taints the contract whether material or not. Upon this issue and testimony, we are to determine whether the trial court erred in its judgment denying the cancellation sought and dismissing plaintiff's petition.

Most of the cases in the books that treat of alleged untrue statements and misrepresentations, and the legal effect thereof in applications for life insurance, are cases in which the issue of such false statements and misrepresentations is made as a defense in an action to recover on the policy. In such case the insurance company has received the premiums from the insured, and has raised no question as to the validity of its contract until called upon to pay after the insured is dead. This case presents a different situation. Plaintiff's contention is that as soon as it learned of the defendant's illness in January, 1921, which was not disclosed in the application, it promptly offered to return to the defendant all that he had paid, and asked to be relieved of liability. In Pacific Mutual Life Insurance Company of California v. Glaser, et al., 245 Mo. 377, 150 S. W. 549, 45 L. R. A. (N. S.) 222, the court quoted with approval the following from Joyce on Insurance, section 1674:

"'If the contract is obtained by fraud or deception, or by false and fraudulent misrepresentations, or the relief sought rests upon accident or mistake, equity will take cognizance and grant relief.'"

It also said:

"'The jurisdiction of equity to decree a cancellation upon proper showing has never been doubted, for insurance contracts, like other writings, may be reformed so as to express the intention of the parties, or, in cases of fraud, accident, or mistake, be altogether avoided.'"

And again:

" 'Where a contract in writing is executed under a mistake by only one of the parties as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written, and place the parties *in statu quo.*' "

It is shown by the uncontradicted testimony that a mistake was made in the contract of insurance between plaintiff and defendant as to a fact material to the risk assumed by the plaintiff, and that as soon as it discovered this mistake, it tendered back the premium and began this action. The plaintiff had done all it could do to avoid the effect of the mistake, both as to the defendant and itself, before coming into court for relief. It has no adequate remedy at law, because if it should wait until the defendant dies, to then defend an action that might be instituted upon this policy, it is possible and probable that witnesses upon whom it must depend to establish this mistake would then be dead, and it would be unable to establish it. We, therefore, conclude that the plaintiff was entitled to begin and maintain this action, and should have been awarded the relief sought.

The judgment is reversed and the cause remanded, with instructions to grant the appellant the relief sought by its petition.