## RESERVE LOAN LIFE INS. CO. v. McCOY.

### No. 1342.

District Court, E. D. Kentucky, at Catlettsburg.

Aug. 8, 1936.

Fitzpatrick, Brown & Davis, of Huntington, W. Va., and R. F. Baird and Clyde J. Cover, both of Fort Wayne, Ind., for plaintiff.

E. J. Picklesimer, of Pikeville, Ky., and Martin & Smith, of Catlettsburg, Ky., for defendant.

FORD, District Judge.

The cancellation of a life insurance policy on the life of William M. McCoy in the sum of $10,000 is the object of this suit in equity filed by the issuing company against the widow of the assured, who is the designated beneficiary of the policy.

The application for the policy was made by the assured on June 19, 1930. The policy was prepared and dated July 14, 1930, but, on account of inability of McCoy to pay the initial premium, the policy was not then delivered to him.

On October 3, 1930, the assured was admitted to the United States Veterans' Hospital at Chillicothe, Ohio, where he died on October 19, 1930.

On October 8, 1930, about ten days before his death, while the assured was seriously ill in the hospital, his wife, the defendant, Claudia J. McCoy, the beneficiary of the policy, wrote to the plaintiff remitting sufficient money to cover the net initial premium on the policy and requesting its delivery, but gave the company no intimation that her husband was then confined in the hospital in Ohio with a critical illness. On the other hand, the letter purported to be signed by the assured in person and was sent from his home at Toler, Ky. A few days thereafter the insurance policy was mailed by the company addressed to McCoy. The defendant thus secured possession of the policy.

The policy contained a clause making it incontestible under certain conditions after the expiration of a period of two years. Apprehending that the defendant would defer bringing action on the policy until the expiration of the two-year period, and averring that such delay would deprive it of an adequate and complete remedy at law, the plaintiff, by this action, invokes the jurisdiction of the court of equity seeking to be relieved of liability under the policy on the grounds (1) that the policy was procured by fraudulent misrepresentation and concealment of material facts, which it was the duty of the applicant to disclose in his application, and (2) that said policy never became effective for want of proper delivery.

Making no question as to the jurisdiction of equity, the defendant, by answer, traversed the allegations of the bill of complaint and by counterclaim asserted her cause of action upon the policy and seeks to recover the amount of insurance stipulated therein.

The record shows that, in answer to specific questions contained in his application, the assured represented that his health was not impaired in any way; that he was last attended by or consulted a physician in April, 1928, at which time he was attended by the examining physician, Dr. Tracy I. Doty, for influenza; that he never suffered from any ailments or disease of the heart, lungs, stomach, intestines, or the middle ear; that he had never had rheumatism, had never raised or spat blood; that he had never had an accident or injury; and that he had never consulted a physician for any ailment or disease other than for influenza in April, 1928.

Undoubtedly, these representations, made in response to specific inquiries, were material, both as a matter of law and as a matter of fact. Jeffries v. Economical Mutual Life Insurance Co., 22 Wall. 47, 22 L.Ed. 833, and Norwich Union Indemnity Co. v. H. Kobacker & Sons Co., 31 F.(2d) 411, 87 A.L.R. 1069 (C.C.A.6).

That each of these representations was false and a gross misstatement of the facts is clearly established by the testimony. It is equally clear from the testimony that the insured and the medical examiner were both fully aware of the utter falsity of each of these representations, and, from the circumstances disclosed, the conclusion is inescapable that they were the result of deliberate and fraudulent collusion between the applicant and the medical examiner, his family physician, in an effort to suppress the true facts so as to fraudulently procure the issuance of the policy.

The following quotation from the brief filed herein on behalf of the defendant seems to make it unnecessary to fortify these conclusions by a review of the testimony bearing on the subject:

"Dr. Doty was the closest doctor to McCoy, had treated him and known him for three years. He had made out numerous reports for McCoy to get him admitted to Veterans Hospitals for treatment for trouble in his right ear, for rheumatism and arthritis; he had sent McCoy to Dr. Hall at Paintsville for treatment to his ear. He had written letters to Dr. Hall, to Cincinnati, to Chillicothe to procure pension for McCoy and his admission to Veterans Hospitals for treatment; he had made out claims for him for sick benefits to some insurance company; had made reports of his physical condition to enable McCoy to collect pensions. In fact Dr. Doty was in position to and did know more of McCoy's physical condition than McCoy himself could know. * * *

" * * * The doctor made the examination while they were alone in McCoy's home. He concluded it the next day in his office. He says he read the questions propounded in the application to McCoy. Such may have been his practice but in this instance it was an idle gesture, since he knew every fact pertaining to his physical condition of which the plaintiff now complains. He knew of the gun shot wound because he dressed it and attended McCoy; he knew of

the ear trouble, rheumatism, arthritis and all other conditions relating to or affecting his health."

Although the medical examiner wrote the answers of the applicant in the application, it is neither shown by the proof nor contended by the defendant that the answers made were improperly or incorrectly set down, nor that anything was done by any agent of the company to induce the assured to make false answers to the questions. Hence the case cannot be controlled by the line of authorities dealing with cases wherein it is shown that the innocent applicant made truthful statements which were improperly or incorrectly recorded by the company's agents.

■ In view of the fact that the medical examiner, though the family physician of assured, also sustained the relation of agent to the plaintiff, the defendant, in seeking an avenue of escape from the results of the misrepresentations contained in the application, resorts to the general rule of law which imputes an agent's knowledge to his principal, and upon that basis contends that, since Dr. Doty, the company's agent, had full knowledge of the facts which were suppressed or untruthfully stated in the application, his knowledge was the knowledge of the company, and the company is therefore estopped to rely upon the falsity of such statements as a defense to the policy.

The Supreme Court dealt with a similar situation in the case of Mutual Life Insurance Company v. Hilton-Green, 241 U.S. 613, 623, 36 S.Ct. 676, 680, 60 L.Ed. 1202. In pointing out that the general rule does not apply under circumstances such as those here disclosed, the court said: "The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing." In the same case it is pointed out that, when an assured consciously permits his application containing material misrepresentations to be presented to the company by its subordinate agents, under circumstances plainly indicating that such agents, though acquainted with the actual facts, would not reveal them, the assured "could claim nothing because of such information in the keeping of unfaithful subordinates."

To the same effect are the cases of Maier v. Fidelity Mutual Life Ass'n, 78 F. 566 (C.C.A.6), and U. S. Life Insurance Co. v. Smith, 92 F. 503 (C.C.A.6).

■ It is disclosed by the record that, before accepting the insured's application for the policy in question, in a proper and customary way, not necessary to here discuss in detail, the plaintiff acquired knowledge that the applicant probably had some infection of the kidneys and of the urinary tract; that he was a notorious bootlegger, and in some respects was not a good insurance risk. Taking all these facts into account, the company imposed a much higher rate for the policy than otherwise would have been charged. It is clear, however, that the company did not have full information as to the nature and extent of the applicant's disabilities.

In 14 R.C.L. § 346, p. 1167, it is said: "In any case the assured will not be permitted to urge, as an excuse for his omission to communicate material facts, that they were actually known to the insurer unless it appears that its knowledge was as particular and full as his own information." Sun Mutual Insurance Co. v. Ocean Ins. Co., 107 U.S. 485, 1 S.Ct. 582, 27 L. Ed. 337.

The company established by satisfactory proof that in issuing the policy in question it relied upon the truth of the statements contained in the application, and I am unable to agree with the contention of the defendant that the circumstances disclosed are inconsistent therewith or are sufficient to warrant a contrary view.

Having reached the conclusion that the insurance policy in question should be canceled for fraud in its inception, it seems unnecessary to discuss or determine the question as to whether the policy was ineffective for want of proper delivery.

The manner in which the defendant contrived to secure from the company the delivery and possession of the policy, of which she was the sole beneficiary, without disclosing to the company the circumstances which must have indicated to her that her husband, the assured, was on his "deathbed" in a hospital in another state, adds a final sordid touch to the picture disclosed by this record. By the simplest and most elementary principles of fair dealing, she was required that she disclose to the company the great change which had so recently taken place in the physical condition of her husband since his application for the policy was filed. She owed toward the company the exercise of the same good faith which she had the right to demand of

it. Even the most unsophisticated person must have known that failure to disclose such facts and conditions was neither good faith nor fair dealing. Shaner v. West Coast Life Ins. Co. (C.C.A.) 73 F.(2d) 681; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895; and Mutual Life Insurance Co. v. Hilton-Green, supra.

In response to the contention advanced on behalf of defendant in the brief filed by her attorneys, to the effect that the alleged false representations of the assured contained in his application are not available as a defense to the company because the photostatic copy of the application attached to the policy is not printed in the size type required by section 679 of the Kentucky Statutes, it is sufficient to say that the defendant in her pleadings failed to make such defense; there is no issue on the point and no proof appears in the record to sustain it. The policy, with the application attached, was put in evidence by stipulation of the parties without objection or exception on the part of the defendant.

For the reasons herein stated, I am of the opinion that the insurance policy in question should be canceled. Let a decree be prepared and entered accordingly.