## Commonwealth Life Ins. Co. v. Cossey.

Jan. 29, 1946.

John B. Rodes and J. Verser Conner for appellant.

Rodes K. Myers and Leland H. Logan for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing in part, affiriming in part.

This was an action by Beulah S. Cossey, beneficiary and widow of Clifford E. Cossey, on one insurance policy for $500 and on another for $300, both policies having been issued to Clifford E. Cossey by Commonwealth Life Insurance Company. On the trial, a judgment was rendered in favor of the beneficiary for $500 on the one policy while a motion for a directed verdict in favor of the insurer was sustained on the $300 policy. The insurer has appealed from the $500 judgment and the beneficiary has taken a cross-appeal from that part of the judgment against her sustaining the motion for a directed verdict on the $300 policy.

The insured took the $500 policy January 11, 1938, allowed it to lapse on April 11, 1943, but applied for its reinstatement on June 10, 1943. In the application for reinstatement signed by the insured, we find the following words and figures:

"I hereby make application to have the same reinstated and warrant the following answers to be full, true and complete."

\* \* \* \* \* \*

"2. Are you now in good health? A. Yes."

\* \* \* \* \* \*

"5. Have you been ill or injured within the past five years? A. Only as shown below.

"6. Have you consulted, been treated or attended by a physician, surgeon or practitioner within the past five years? A. Only as shown below."

\* \* \* \* \* \*

"If questions 3, 4, 5 or 6 are answered 'yes' set out particulars below.

"Date: April 5, 1943.

"Cause of Illness or Injury: Tonsils removed.

"Duration: 1 day.

"Have you entirely recovered? Yes.

"Physician's or Practioner's Name and Address: Dr. Singleton, Local."

\* \* \* \* \* \*

"It is agreed that the above statements are made for the purpose of securing any reinstatement made hereon, which reinstatement shall be void if the above answers be untrue or incomplete. It is agreed that said contract is not and will not be restored to good standing unless and until this application for reinstatement is approved by the Company."

The $300 policy was issued to Cossey on November 23, 1943, upon the basis of his signed application which stated, in brief, that he was in good health and that he had not suffered from serious illness, excepting three months treatment for neuritis and rheumatism in the year 1933 and removal of tonsils in April of 1943.

Each of these policies contained the usual clause prohibiting any alteration of the policy or waiver of its terms, excepting by the insurer's president, vice-president, secretary or assistant secretary.

The answer of the insurer, none of which was traversed by pleading or agreed order, alleged that the insured's statements in both applications relating to his past illness and treatment by physicians were false and were material to the risks involved and that the policies would not have been issued had the truth been known by the insurer.

The true facts were that the insured was, prior to the dates of the two applications, treated on different occasions by his physician, Dr. Blackburn, who has testified that: "During the winter of 1942 and 1943 and the spring and summer of 1943 I gave Mr. Cossey several different drugs, including potassium iodine, sodium salycilate, and other drugs, in addition to the analgesics mentioned above." The insured was having neuralgic pains and as a culmination of the treatment and consultations during the winter of 1942 and 1943 and the spring of 1943, he had a tonsils operation on April 5, 1943. He continued to have trouble and was accordingly sent to Dr. Bryan in Nashville in September of 1943 for complete examination and X-rays. His wife, the beneficiary of these policies, went with him to Nashville and Dr. Bryan gave her a report of the examination and X-rays, which report showed the insured to be suffering from multiple myeloma, which is a malignant, fatal disease involving the bony structure. It was believed by all medical opinion that the disease had been prevalent in the insured during the winter of 1943 at the time of his pains and headaches. The insured himself was never informed as to his real disease or true condition but his wife, the policy beneficiary, was so informed at the time of insured's examination in September of 1943. The insured continued to work at his occupation until December 31, 1943, but later died on March 24, 1944, from this myeloma disease.

The beneficiary, according to her testimony, was not present at the execution of the application for policy reinstatement on June 10, 1943, but she was at hand at the execution of the application for the $300 policy on November 23, 1943, just two months after Dr. Bryan

had informed her of her husband's fatal disease. According to evidence for the beneficiary, she told the insurer's soliciting agents, at the time of the application of November 23, 1943, for the $300 policy, that her husband was a sick man and under treatment by his physician, but she withheld, according to her own testimony, from these agents all information pertaining to his fatal disease of myeloma, which was then in existence and of which she had knowledge.

The insurer pled and proved that the statements of insured on his two applications to the effect that the insured had no physical troubles or diseases or doctor's treatments in the five years prior to June-November, 1943, excepting a tonsils operation on April 5, 1943, of one day duration, were false statements that were material to the risks involved and that the policies, in accordance with the usual custom of insurers, would not have been issued had the truth been known. The beneficiary did not deny by pleading nor disprove by evidence any of these statements of the insurer about the misrepresentations of the insured or about the materiality of such misrepresentations or about the unwillingness of the insurer to issue these policies if the true facts had been known.

The insurer tendered back, in its answer, the total sum of $152.51 to the beneficiary, representing the premiums paid, the automatic paid-up insurance due on the original policy issued, and the interest accrued up to the date of the tender. The beneficiary refused to accept this tender of $152.51 made by the insurer, but elected to go into trial on the issues of the case.

Since representations, which were subsequently proven to be false, were made to the insurer by the insured on both applications for these two policies, such representations being that the insured had not had medical attention during the previous five years, excepting a tonsillectomy of one day duration, while in truth he had been treated on several occasions during that period for an unknown trouble that later proved to be fatal, the insurer was not liable on the policies if these representations were material. The insurer proved without controversy that such representations were in fact material. The rule is clearly established in this state that (1) where a misrepresentation is fraud-

ulently made by the insured to procure a policy of insurance the element of materiality is unnecessary and that (2) the element of fraud is unnecessary when the representation is material to the risk. Northwestern Mut. Life Ins. Co. v. Yoe's Ex'r, 283 Ky. 406, 141 S. W. 2d 554; National Life & Accident Insurance Co. v. Fisher, 211 Ky. 12, 276 S. W. 981; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. 2d 990; Metropolitan Life Insurance Co. v. McDonald, 246 Ky. 109, 54 S. W. 2d 625; Metropolitan Life Insurance Co. v. Hutson, 253 Ky. 635, 69 S. W. 2d 742.

The Northwestern Mutual Life Insurance Company case, supra, was very similar to this case, in that the insured did not divulge in her application to the insurer the treatments she had received from different physicians during the previous five year period. That being the established law in our state, we do not now depart from the firm recognition and full-grown maturity of its principle. Should we hold otherwise, the floodgates of insurance fraud would be opened wide and the final results would not redound to the general public welfare.

Appellee contends that the insurer's agents knew, as shown by her testimony and by other evidence in the case, on November 23, 1943, the date of the last application, the one for the $300 policy, that her husband was a sick man and under a physician's treatment. If we accept her evidence as true, and entirely reject appellant's evidence, which we or the jury undoubtedly could do, yet we have her own words that she did not divulge to these agents any information about her husband's myeloma disease, the following being her testimony on this particular subject:

"Q. Was anything said about myeloma? A. No, sir.

"Q. About his having that disease? A. No.

"Q. Nothing was said about that? A. No."

We are well aware that this court has held that where an insurance company is fully cognizant of all the facts that it might otherwise learn from an insurance application concerning the applicant's previous state of health, the policy liability cannot be avoided on the

ground that the insured made material misrepresentations in such application. This principle is stated in Suttles v. Kentucky Home Mutual Life Ins. Co., 300 Ky. 696, 189 S. W. 2d 845, and Svea Fire & Life Ins. Co. v. Walker, 235 Ky. 289, 30 S. W. 2d 1105. However, it will readily be seen from appellee's own testimony quoted above that the insurer did not become fully cognizant of all the facts, but only of some of the facts of lesser importance, concerning the insured's previous state of health. Nothing whatever was said to the appellant or to any of its agents about the fatal, malignant myeloma that produced Cossey's death a few months later. Therefore, this case clearly does not come within the rule mentioned in the Suttles and the Svea Fire and Life Ins. Co. cases, supra.

For the reasons set out herein, the judgment is reversed on the appeal and affirmed on the cross-appeal. If the evidence upon a second trial remains the same, a directed verdict in favor of the appellant on the whole case would be proper, but judgment should be entered in appellee's favor for $152.51, the amount heretofore tendered to her by the pleadings as repayment of premiums, paid-up insurance and accrued interest.

Judgment reversed on the appeal and affirmed on the cross-appeal.