## The Maccabees v. Covert.

April 30, 1946.

Jay W. Harlan for appellant.

C. E. Rankin for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

This was an action by John C. Covert, appellee, the husband and beneficiary of Marie S. Covert, whose life was insured by a $1000 policy issued by The Maccabees, appellant, a fraternal benefit association of Michigan. From a judgment of the trial court for appellee for $1000, the appellant now prosecutes this appeal.

The errors assigned as grounds for a reversal are five in number, the first of which is appellant's contention that it was entitled to a directed verdict.

Marie S. Covert made her written application on September 14, 1944, to The Maccabees for a policy of life insurance in the amount of $1000, and in her application were the following questions with the corresponding answers as given by the applicant:

"Q. 39. Are you in good health? A. Yes.

"Q. 40. Are you in any way crippled or deformed or have you any physical impairment? A. No."

"Q. 45. Have you consulted, or been attended by, any physician during the past five years? A. No."

"Q. 65. Have you ever had any disease, operation, injury, illness or disability not mentioned? A. No."

"Q. 76. * * * I hereby certify that I have carefully reviewed the answers to the foregoing questions more specifically referred to as questions thirty-nine (39) thru seventy-five (75) inclusive and I warrant and agree that they are written as stated by me and are true in every particular.

"Marie S. Covert."

Marie S. Covert died on December 8, 1944, from a disease shown on the proof of death to be bulbar paralysis, which disease, according to our information as shown in medical dictionaries, is generally chronic and is fatal in varying periods of from one to several years after its inception.

The undisputed evidence shows that before her application for this insurance policy, Marie S. Covert had been treated six times during June and July of 1944 by her physician of Harrodsburg for illness he thought was menopause and had also been treated twenty times during August, September and October of 1944 by a chiro-

practor of Danville for a paralysis disability that affected her right arm and right side of her face and her tongue.

One of Marie S. Covert's neighbors, a woman who lived across the highway, testified that Marie S. Covert had symptoms of a form of paralysis in the spring and summer of 1944, which symptoms were manifested by loss of power of speech, drawing of facial muscles, loss of use of arm, jerkiness and nervousness. This neighbor stated that she had been called upon to go over and help dress Marie S. Covert around August 1, 1944, so that the latter might go to Danville and consult the chiropractor mentioned above.

This insurance policy did not require a preliminary medical examination but did require a written application as a source of information for its medical inspectors.

The appellant pled that Marie S. Covert made statements that were false in her written application for the insurance policy in question and that the appellant would not have issued such an insurance policy had the falsity of such statements been known to the appellant and that issual of the policy, if the true facts had been known, would have been contrary to the general custom prevailing in the insurance business.

Although the insured said in her insurance application of September 14, 1944, that she was in good health, yet her own physician, who treated her in July of 1944, in testifying on this trial had the following to say on this subject:

"Q. Could you say from what you saw of her condition, she was in a reasonable state of good health or not? A. No—I could not consider her in good health."

This physician's opinion as to insured's unsound health was corroborated in a substantial way by the chiropractor who treated her twenty times in August, September and October of 1944. One of the treatments of the chiropractor was given on September 14, 1944, the very day of the insurance application. If the insured was in good health on September 14, 1944, as the application related, then the court fails to understand why she went to a chiropractor that day and on nineteen other days around that same time. This chiropractor

said she had a paralysis of the arm, face and tongue and was nervous and jerky, all of which leads to the inevitable conclusion that the insured's health was not good on the date of her insurance application. This unsound condition of the insured's health on the date in question was further established by the neighbor woman who said she had found the insured so paralyzed about a month and a half before the insurance application as to have been unable to dress herself without assistance.

Paralysis is a pronounced manifestation of some serious physical malady. It is not an index of good health. On the contrary, it is an evil handwriting on the wall that loudly condemns the state of one's physical health. Undoubtedly, the insured had paralysis and bad health before and after this insurance was purchased. In fact, paralysis killed the insured within three months of her application. Although the paralysis that killed the insured could have been acute and entirely nonexistent when the insurance was taken, yet the theory of this possibility appears to have been destroyed by two witnesses who found the insured with a serious and pronounced paralysis in the spring and summer of 1944. The court can not understand how the insured's health could possibly have been considered good at or about the time of this policy application.

As representations that were proven to be false were made to the appellant in this application, the appellant was not liable on the policy if these representations were material. The rule is clearly established in this state (1) that where a misrepresentation is fraudulently made by the insured to procure a policy of insurance the element of materiality is unnecessary and (2) that the element of fraud is unnecessary when representation is material to the risk. National Life & Accident Insurance Co. v. Fisher, 211 Ky. 12, 276 S. W. 981; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. 2d 990; Metropolitan Life Insurance Co. v. McDonald, 246 Ky. 109, 54 S. W. 2d 625; Metropolitan Life Insurance Co. v. Hutson, 253 Ky. 635, 69 S. W. 2d 742. Therefore, if the false representations were material to the risk no recovery could be had on the policy.

The standard by which materiality is to be determined is the action which insurance companies generally would have taken on the application, when acting in ac-

cordance with their usual practice and usage, if the truth had been told. New York Life Insurance Co. v. Long, 199 Ky. 133, 250 S. W. 812; Globe Indemnity Co. v. Daviess, supra. If the insured made a material misrepresentation the policy is avoided and whether or not a misstatement is material to the risk is to be determined by the jury acting not upon what it may think about the materiality of the false representation but by what those engaged in the life insurance business, acting reasonably and naturally in accordance with the usual practice among life insurance companies, would have done with the application if they had known the truth. Commonwealth Life Insurance Co. v. Goodknight's Adm'r, 212 Ky. 763, 280 S. W. 123.

It was proven by the medical director of the appellant that there was full reliance on the truth of the answers made by the insured and that neither the medical director nor the appellant had any further information concerning her. Appellant's medical director also stated that it is the common practice of insurance underwriters not to accept for insurance protection applicants suffering from bulbar paralysis or having symptoms which may indicate the existence of such disease, and he further testified that had he known of the physical complaints of the insured or known of her previous treatments by physicians or others, the insured's application would not have been approved but would have been held in abeyance pending further inquiry as to the state of her health. The testimony of the medical director was not contradicted and therefore the materiality of the misrepresentation was not a question in issue on the trial. Both the falsity of the representations and the materiality thereof were undisputed facts and in these circumstances there was no issue to submit to the jury. The evidence of the case being just as it was produced on this trial, it was the duty of the trial court to have directed a verdict for the appellant.

Wherefore, the judgment is reversed for further proceedings consistent herewith.