**WABASH LIFE INSURANCE COM-
PANY, Appellant,**

v.

**Frances R. MAGUIRE, Appellee.**

Court of Appeals of Kentucky.

Nov. 20, 1970.

As Modified on Denial of Rehearing
Feb. 3, 1971.

M. G. Peers, O. S. Peers, Peers & Peers, Louisville, for appellant.

Michael M. Hellmann, Louisville, for appellee.

PALMORE, Judge.

Wabash Life Insurance Company appeals from a verdict and judgment awarding Frances R. Maguire $30,000, the aggregate face amount of two life insurance policies issued on the life of her late husband, John T. Maguire, in the fall of 1966, and in which she was the named beneficiary.

Both policies were issued on the basis of the same application and medical report. The ground on which the company denied liability and defended against the beneficiary's claim is that these two preliminary instruments, which are incorporated in the contracts, contained material misrepresentations, and that a report furnished by Maguire's family physician concealed material information.

The application was filled out by the company's agent and signed by Maguire on September 1, 1966. Dr. Don Pruitt, a physician selected by the company, conducted a medical examination on September 6, 1966, and filled out the medical report according to the information furnished him

by Maguire. Both Maguire and Dr. Pruitt signed the report. The application for insurance disclosed that Maguire's records concerning a heart attack in 1963 were in possession of Dr. Lee Heine and contained a general authorization for any physician or medical institution to provide to the insurance company complete details of any information gained through observation or attendance of the applicant.

At the time the policies were issued Maguire was 49 years old. Five years earlier, in 1961, he had been treated by Dr. Gerald Greenfield for what his widow described as chest pains. In 1963 he had been hospitalized for three weeks and confined in bed for another three weeks under diagnosis of arteriosclerotic heart disease, acute coronary insufficiency, and possible myocardial infarction. In the summer of 1966 he had applied to other companies for life insurance but had been rejected. The policies issued by the appellant company in the fall of 1966 were rated substandard, which meant that Maguire was charged a higher premium than would have been the case had he not experienced any coronary symptoms. He died on December 22, 1967, as the result of acute myocardial infarction.

Among other items, the application signed by Maguire on July 1, 1966, contained a series of eight specific questions with a requirement that as to any of them answered in the affirmative the applicant should "give details below such as: condition, date of treatment or confinement, physician attending." The following questions were answered in the affirmative:

"2. Has application for or reinstatement of Life or A. & H. Insurance been declined, postponed or rated?"

"3. Have you been a patient in any Hospital or Sanitarium during the past five years?"

"4. Have you consulted or had treatment from any Physician or Practitioner for any cause not mentioned above within the past five years? List Family Doctor."

"8. Do You Have Or Have You Had:
(a) Heart or Circulatory Trouble?"

In a space provided below the questions the following details were given:

"# 3  6–64 Stomach Ulcer (no surgery) Completely healed.

"# 4  Ins. Exam 6–66
Dr. Lee Hiene [sic]
6506 Strawberry Ln.

"# 2  Provident Life & Accident declined 6–66

"# 8  Myocardic infraction [sic] 6–61
Dr. Lee Hiene [sic]
6506 Strawberry Ln."

Among the inquiries and answers on the medical report were the following:

"8. Have you EVER had any symptoms of or been affected with: (If 'Yes' to any, give full details under Remarks below.)

\*      \*      \*      \*      \*      \*

"b. Disease or Disorder of Heart, Intestine, Kidney, Liver, Lung, Stomach or other vital Organ? Yes." [Answer "Yes" inserted and "Heart" underscored]

"9. Have you consulted a physician or received hospital or sanitarium observation or care during past five years?————(Yes or No)

Examiner should develop history carefully and state details below.

| "Illness | Number of Attacks | Date From – To | Severity | Any Remaining Effects | Attending Physician's Name and Address |
|---|---|---|---|---|---|
| Myocardial infarction | 1 | Aug. 1963 Sept. 1963 | Mild | None | Dr. Gerald Greenfield (deceased)" |

"13. Are you in sound health, as far as you know and believe?
Yes"

"REMARKS—Use for details of any special comment.

"8. Dr. Lee Heine 273 Evangeline Louisville Ky. has this man's records. Applicant was hosp. for 3 weeks and was on bed rest for 3 weeks. Complete recovery after 6 weeks. No recurrence. Has ECG with every check up every 6 months."

■ This report showed also that both of Maguire's parents had died of coronary ailments at the age of 69. It should be noted that although the application of July 1, 1966, did not mention the 1963 coronary episode and hospitalization, they were explicitly reported to and recorded by the medical examiner. The company's brief makes a considerable point of this omission in the application, and treats it as a misrepresentation to the effect that Maguire had experienced but one heart attack rather than two. Apparently it takes the further position that the omission of a material fact in either of the two instruments would constitute a fatal misrepresentation. It seems to us, however, that common sense requires the two forms to be considered together. If the fact which is for some reason omitted from one is reported in the other, it simply has not been concealed, either by the applicant or from the company.

But to go on with a recitation of the facts, the company sent Dr. Lee Heine its printed form requesting him to provide information as therein indicated relative to Maguire, which he did. It appears, however, that he gave only the data contained in his own file on Maguire, which included treatment in 1965 for a gastric ulcer but did not cover the period of time during which he had been treated by Dr. Greenfield, who before his death in 1965 had been associated with Dr. Heine. Hence the information provided by Dr. Heine did not provide the details about Maguire's coronary history that would have been disclosed by Dr. Greenfield's records, particularly those which were made out incident to Maguire's admission to the hospital in 1963.

Aside from the aforementioned contention that Maguire falsely stated that he had suffered only one heart attack instead of two, the company's argument finally centers on the circumstance that Maguire had suffered anginal pains and customarily carried nitroglycerin tablets, which facts were not reported in the application or the medical report. In view of his apparent or alleged reliance on this medication, the argument is that (1) it was a material misrepresentation for Maguire to report to the medical examiner that he was in sound health (question 13, medical report), and (2) this was a substantial detail fairly required to be stated in the application and medical report in connection with the mention of his coronary history.

■ Before going on to an analysis of this basic argument, which concerns the misrepresentations and concealment alleged to have been made by the insured himself in the application and medical report, we shall digress for a moment to discuss the contention that the claimed omissions from Dr. Heine's report also constituted a ground for avoidance of the policy.

In support of this latter contention the company cites one case, Reserve Loan Life Ins. Co. v. McCoy, 15 F.Supp. 933 (E.D. Ky.1936), in which the medical examiner selected by the insurance company happened also to be the applicant's family physician, and in which both the application and the report of medical examination contained substantial affirmative misrepresentations that were known by the applicant and the physician to be false. The holding of the reported opinion was that the beneficiary of the policy could not prevail on the theory that in making his examination and report the physician was

acting as the company's agent and the company was therefore charged with notice of that which the agent knew. The principle for which it stands is that "when an assured consciously permits his application containing material misrepresentations to be presented to the company by its subordinate agents, under circumstances plainly indicating that such agents, though acquainted with the actual facts would not reveal them, the assured 'could claim nothing because of such information in the keeping of unfaithful subordinates.'" *Id.* at 15 F.Supp. 935, citing Mutual Life Insurance Company v. Hilton-Green, 241 U.S. 613, 623, 36 S.Ct. 676, 680, 60 L.Ed. 1202.

The case has no application here. Maguire reported the salient fact that he had a history of heart trouble, gave the name of his family physician, and consented for the physician to supply further information to the insurance company. If the physician failed to provide all of the information available to him and desirable to the company, it was not by reason of any design or bad faith on the part of Maguire, and he cannot be held responsible for it. Moreover, there is no evidence in this case that Dr. Heine intended any concealment. True, the report form sent to him by the company contained, among other similar instructions, a catch-all statement, "Please record any other information which might have a bearing on this person's health," but there is nevertheless a good deal of justification for Dr. Heine's explanation that in a $5.00 report he did not think he was expected to delve into Dr. Greenfield's records and come up with a complete case history. Among other things he assumed, for example, that the company already had conducted a medical examination. In the final analysis, before the company issued its policies it knew that the man had a history of coronary trouble for the past five years, including one episode in 1963 serious enough to lay him up for six weeks, and it had permission to seek out and examine the hospital records had it seen fit to do so. Under such circumstances we are not persuaded that the omissions in Dr. Heine's report were material anyway.

The further claim that the appellee, Frances Maguire, the insured's widow and beneficiary under the policy, cannot recover because, in substance, she knew of the policies and knew her husband's condition is nothing short of ridiculous, and we shall not dignify it by further mention.

We return now to the main stream.

In Maccabees v. Covert, 302 Ky. 481, 194 S.W.2d 498 (1946), a fraternal association had issued a $1,000 life insurance policy on the basis of information provided in the insured's application, without requiring a preliminary medical examination. One of the questions in the application, dated September 14, 1944, was, "Are you in good health?" to which the applicant replied, "Yes," despite having been treated six times during June and July of 1944 by her physician for what he thought was an illness attributable to menopause, and several times subsequently by a chiropractor "for a paralysis disability that affected her right arm and right side of her face and her tongue." She died on December 8, 1944, from the chronic disease of bulbar paralysis. This court held that the insurer could avoid the policy on the ground of material misrepresentation. Again, however, we do not regard that case as analogous to this one.

█ Not only was it so testified by Dr. Heine and Dr. Pruitt, but it is a matter of common knowledge, that usually one of the major factors leading to a coronary infarction is arteriosclerosis, a disease which narrows the capacity of the blood vessels affected and thus increases the likelihood of an insufficient blood supply to the heart and the danger of occlusion. It is equally well known that arteriosclerosis is an irreversible process. It does not get better. Dr. Pruitt knew this, yet he had no difficulty in accepting Maguire's opinion in September of 1966 that he was in sound health. He treated

it as meaning that Maguire had recovered from the 1963 infarction without further effects. "Complete recovery after six weeks. No recurrence. He had an electrocardiogram with every check-up every six months. * * * I took it to mean that he had no symptoms following this heart attack." And, indeed, there is no evidence that Maguire had in fact experienced any further symptoms. We are of the opinion that as a matter of simple common sense anyone reading the medical report signed by Maguire and Dr. Pruitt would understand the statement that Maguire was in sound health to mean just what Dr. Pruitt took it to mean. In the context of the report it was not a misrepresentation unless Maguire actually had experienced further symptoms, and as we have said, there is no substantial evidence that he had.

The incidence of anginal pains and the taking of nitroglycerin were disclosed principally in the 1963 hospital reports, though Mrs. Maguire testified that she knew her husband customarily carried nitroglycerin tablets on his person. Again as a matter of common knowledge and common sense, such details fall within the ambit of what should reasonably be deduced from information that a man has had heart trouble for five years, including a major episode requiring hospitalization. That Maguire carried nitroglycerin, which is a dilator of blood vessels, does not connote the extent to which he had to or did use it after 1963, but only that he was prepared against the contingency of further symptoms. Possession of an extinguisher certainly does not suggest the presence of a fire. Evidently it did not disturb the company to know that he was having an electrocardiogram every six months. Moreover, the report furnished to the company by Dr. Heine showed on its face that when he treated Maguire in 1965 for gastric ulcer he caused prothrombin time tests to be made, which in itself should have apprised the company of the possibility that Maguire was taking anticoagulants.

In summary, we do not think it was incumbent on anyone to see that the insurance company was provided with copies of the hospital reports reciting the details which the company now says it wishes it had known. It could and probably should have asked for them, but did not see fit to pursue its inquiry that far. The trial court submitted to a jury the questions of whether any of the answers inserted in the medical report were substantially untrue and, if so, whether the company otherwise would have issued the policies. We are inclined to believe that the submission was unnecessary, and that the beneficiary was entitled to recovery as a matter of law.

Viewing this case in perspective, it seems remarkable to us that a reputable insurance carrier, with as little justification as we can find in this record, would subject the beneficiary of its policies to the burden of litigating her claim to a court of last resort.

The judgment is affirmed.

All concur.

NEIKIRK, J., not sitting.